[No. F034257. Fifth Dist. July 7, 2000.]

In re BRISON C., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Plaintiff and Respondent, v.
SONIA C. et al., Defendants and Appellants.

## COUNSEL

Valla S. Hoffman and Shama Mesiwala, under appointments by the Court of Appeal, for Defendant and Appellant Sonia C.

Mary Willans-Izett, under appointment by the Court of Appeal, for Defendant and Appellant Brian C.

Phillip S. Cronin, County Counsel, and Nannette J. Stomberg, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

### BUCKLEY, J.—

#### INTRODUCTION

Nine-year-old Brison C. is the focus of an extended battle between his parents, appellants herein. Respondent Fresno County Department of Children and Family Services entered the fray after mother claimed that Brison had been sexually molested by his father and father claimed mother had physically abused the boy. Both claims were deemed unfounded after investigation. Respondent then filed a petition pursuant to Welfare and Institutions Code section 300,[1] alleging that Brison was suffering serious emotional damage because of his parents' ongoing custody dispute. Brison was

---

[1] Unless otherwise specified, all statutory references are to the Welfare and Institutions Code.

removed from the mother's home and placed in foster care.[2] After hearing, the allegation was found true and return of Brison to either parent was found detrimental. The court did not make any specific factual findings. Both parents challenge the sufficiency of the evidence supporting these determinations.[3]

The record has been reviewed in detail. As is unfortunately true in many protracted divorces, Brison was caught in the crossfire of his parents' frustration and anger with each other. However, even assuming that the parents' conduct prior to Brison's removal rose to the level of emotional abuse, respondent failed to proffer substantial evidence showing that at the time of the hearing Brison was seriously emotionally disturbed or that he was in substantial danger of suffering serious emotional damage. The evidence shows only that Brison, an otherwise reasonably well-adjusted child who performed well at school and displayed no serious behavioral problems, despised his father and desperately sought to avoid visiting him. Standing alone, this circumstance is insufficient to support a finding that Brison is seriously emotionally damaged. Further, by the time of the hearing the parents had recognized the inappropriateness of their behavior and made good faith efforts to alleviate the problem. Thus, respondent did not establish the elements necessary to prove that Brison came within the statutory definition of a dependent child. This determination compels reversal of the order and obviates the necessity of addressing the parents' remaining contentions.

## FACTS AND DISCUSSION

A combined jurisdictional and dispositional hearing was held on October 1, 1999. The parties submitted the matter to the court on the report from the Fresno County Department of Children and Family Services (the report). The court based its decision on this report and its observation of the parents.[4]

The report contains the following information. Brison was removed from his mother's custody and placed in the Craycroft Youth Center on or about

[2] When Brison was detained by respondent, mother had physical custody and father had twice-weekly supervised visitation.

[3] The jurisdictional/dispositional order was filed on October 1, 1999. Mother's notice of appeal was filed on October 20, 1999. Father's notice of appeal was received by the clerk of the juvenile court on November 29, 1999. We therefore deem his appeal to have been timely filed. (*Pacific Southwest Airlines v. Dowty-Rotol, Ltd.* (1983) 144 Cal.App.3d 491, 493 [193 Cal.Rptr. 25]; Cal. Rules of Court, rule 2(a).)

[4] There is additional documentation contained in the clerk's transcript. However, when assessing the sufficiency of the evidence, we review only that which was before the fact finder when the contested decision was made. Hence, only the report and its attachments have been considered.

August 12, 1999. During an intake interview, Brison disclosed that he has nightmares, but he did not elaborate. He got along with others while at Craycroft but needed encouragement to participate in group activities.

On August 13, 1999, a meeting was held in which both parents were present. Mother stated that she wants Brison to be happy and safe and have the best of all things. She admitted to discussing child support and other issues with therapists while Brison was present. Father stated that he would like to share custody of Brison with mother and does not want Brison to be "caught in the middle . . . of the custody dispute." He has not spent much time with Brison during the past 18 months. He realizes "that he could have handled things differently, that he could have chosen different words when he spoke with Brison." Both parents wish to reunify with Brison and are willing to participate in counseling and parenting classes.

Brison was placed in a foster home on or about September 10, 1999. There have been no problems or concerns regarding his placement in the foster home. He is in good physical health. He does well in school and performs at or above average for his grade. His mother has weekly supervised visits with Brison. She is affectionate toward him and Brison asks to be held by his mother. There is no evidence that Brison is alienated from her. However, Brison refuses to visit with his father. He fears him and has suicidal ideation if forced to visit or live with him.

Attached to the report are evaluations by various psychotherapists dating back to 1997. Psychologist Richard King evaluated Brison in February 1997. He found Brison "intellectually gifted and advanced for his age." He had no history of severe behavioral problems. However, he displayed a pronounced degree of alienation toward his mother. The conflict between his parents was causing him upset, confusion and gastrointestinal distress. Dr. King prepared a second report in April of 1997. He wrote that Brison now spoke positively of his mother and wished to spend time with both parents.

One year later, in April of 1998, psychologist Gaines A. Thomas submitted a recommendation to the court. Therein, he stated that he had taken over the case from Dr. King four months before. Brison had "evidenced a significant improvement in his behavior" at home and at school.

In a report dated June 20, 1998, a third psychologist, Richard Engeln, submitted his psychological evaluation. He had seen father three times and Brison on one occasion. It was his opinion that father was motivated to cease any dialogue that may alienate Brison from his mother. "[T]here is a low probability of him making statements critical of his ex-wife to Brison."

A fourth psychologist, Valerie Forward, took over the case in July of 1999. She prepared a memorandum to social worker Greg Sanchez dated August 13, 1999. She had met with both parents and with Brison on three occasions. However, she had not yet "had the opportunity to evaluate the psychodynamics of child-parent interactions in a thorough manner."

On August 18, 1999, Rollin Behrens, a licensed mental health clinician, conducted a mental health assessment with Brison at the Craycroft Youth Center. In his subsequent report, Mr. Behrens wrote that Brison stated he was terrified of being forced to live with or visit his father. He thinks of suicide if forced to live with him. However, Brison had no imminent plans to follow through on this thought. Brison told Mr. Behrens that his father sexually abuses him. Mr. Behrens dismissed this allegation as having been previously declared unfounded. No abnormal behavior was noted.

In an August 18, 1999, update, Dr. Forward wrote that it was her opinion Brison should continue to remain in a neutral environment with daily parental visitation. She noted that both parents had begun receiving therapy through Fresno County Mental Health Services. The update contains no information about Brison's behavior or emotional state.

A police report dated June 2, 1999, was also attached. Brison told the officer that he had been physically compelled to visit his father at Dr. Thomas's, despite his verbal and physical protests. He told the officer that he did not want to visit or live with his father again. The officer did not believe Brison's claim that his father has touched his penis and anus and put something inside his anus.

Finally, there was also a notarized letter from Brison's 16-year-old half brother Brian. Brian wrote that he and his brother Bradley had been physically and verbally abused by their father. Brian stated that he has refused to see his father since he was 13 years old. During their last visit, his father brutally struck him for accidentally hitting Brison on the head with a nerf ball while they were playing catch. A 1994 police report describing this incident was attached.

We now turn to the seminal question: Was the evidence sufficient to support a finding that Brison came within the statutory definition of a dependent child?

■ "In addressing this [question], we are constrained by familiar principles: 'In juvenile cases, as in other areas of the law, the power of an

appellate court asked to assess the sufficiency of the evidence begins and ends with a determination as to whether or not there is any substantial evidence, whether or not contradicted, which will support the conclusion of the trier of fact. All conflicts must be resolved in favor of the respondent and all legitimate inferences indulged in to uphold the verdict, if possible.' " (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820 [2 Cal.Rptr.2d 429].)

█ "The petitioner in a dependency proceeding must prove by a preponderance of the evidence that the child who is the subject of a petition comes under the juvenile court's jurisdiction." (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859 [283 Cal.Rptr. 788].) Section 300 sets forth the grounds for dependency jurisdiction. This section was amended in 1987. The Legislature's unmistakable intention in doing so was to narrow the grounds on which children may be subjected to juvenile court jurisdiction. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1323 [49 Cal.Rptr.2d 139]; *In re Rocco M., supra*, 1 Cal.App.4th at pp. 820-823.) As amended, subdivision (c) of section 300 provides, in relevant part, that a child may be declared a dependent if he or she "is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian . . . ."

Thus, to prove Brison came within the statutory definition of a dependent child, the county bore the burden of establishing the following three elements: (1) serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior or a substantial risk of severe emotional harm if jurisdiction is not assumed; (2) offending parental conduct; and (3) causation. (*In re Alexander K.* (1993) 14 Cal.App.4th 549, 557 [18 Cal.Rptr.2d 22].) "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M., supra,* 1 Cal.App.4th at p. 824.) Standing alone, the past infliction of harm does not establish the substantial risk of future harm. Rather, " '[t]here must be some reason to believe the acts may continue in the future.' " (*Ibid.*)

█ We agree with mother that the record does not contain substantial evidence showing that Brison is seriously emotionally damaged or that he is in danger of becoming so unless jurisdiction is assumed. In fact, in light of the apparent ease with which he adapted to the sudden changes from his mother's care to Craycroft Youth Center to a foster home, Brison is a

remarkably resilient child. At the time of the hearing, he was physically healthy and was performing at or above grade level at school. He did not exhibit behavioral abnormalities or difficulties while at the Craycroft Youth Center, and his foster care provider has reported no problems. Brison loves his mother and is happy to see her. He is affectionate toward her and they interact well together. While Brison mentioned having nightmares during his intake interview at the Craycroft Youth Center, the record contains no details. Occasional nightmares are not per se abnormal. No psychological testimony was presented. Dr. Forward did not provide any written evaluation of Brison's current mental condition. Her conclusionary placement recommendation lacks foundational facts and is therefore not probative on the subject of Brison's overall emotional health. The earlier psychological evaluations are years out of date.

The sole indication of emotional difficulties is Brison's deep dislike and fear of his father. However, it is important to recognize that this is not a generalized pathological fear of all men; it is only the company of his father which Brison wants to avoid. Moreover, while respondent assumes that Brison's fear and aversion to his father are caused entirely by the custody battle, the record does not support this conclusion. Brison may avoid his father for reasons unrelated to his mother's disparaging comments. Brison reports that his father has hit him and has been abusive toward his mother. In addition, there is evidence in the record indicating that his father may have physically and verbally abused Brison's older half brothers, Brian and Bradley, and that Brian also refuses to have contact with his father. Thus, Brison's aversion to his father does not inherently prove serious emotional disturbance or unhealthy parental alienation. Brison is an intelligent child. His antipathy may simply reflect an honest appraisal of his father's character and a self-protective and healthy desire to avoid his company.

Respondent relies on Brison's comment regarding suicide as proof that he is seriously emotionally disturbed. However, this ignores the fact that the comment was conditioned on Brison's father being awarded custody and that Brison has no plans to follow through on the threatened act. He has not exhibited any self-destructive behavior. It is clear that Brison was simply trying to emphatically express his wishes regarding custody.

In sum, the record here lacks significant evidence of behavior indicative of severe anxiety, depression, withdrawal or untoward aggressive behavior. In the absence of other indications of severe anxiety or depression, Brison's aversion to his father is insufficient to support a finding that he is emotionally disturbed to such a degree that he comes within section 300.

The record also lacks substantial evidence showing that Brison is in significant danger of suffering serious emotional damage if jurisdiction is not assumed. Both parents have recognized the inappropriateness of their past behavior and of commenting to Brison about the other. They have expressed a willingness to change their behavior patterns and to attend counseling and parenting classes. In fact, Dr. Forward noted in her update that the parents have begun receiving therapy. There is no evidence showing that the parents suffer from serious mental illnesses, are delusional or are otherwise incapable of expressing their frustration with each other in an appropriate manner.

*In re Anne P.* (1988) 199 Cal.App.3d 183 [244 Cal.Rptr. 490], relied on by respondent, is readily distinguishable. Like Brison, Anne was the trophy in an extended custody battle. However, unlike Brison, she exhibited symptoms of profound emotional dysfunction, and her parents were unwilling to recognize or change their destructive behavior. Both the probation officer and the foster mother testified that Anne acted out in a highly disturbed manner. Her foster mother had taken care of over 450 children. She characterized Anne as one of the more disturbed children she had ever protected. In the foster mother's opinion, "Anne was in danger of losing complete control and 'going off the deep end.'" (*Id.* at p. 191.) During a videotaped interview, Anne appeared distraught and unhappy. Anne had a near morbid or pathological fear of all men and panicked at the sight of them. (*Id.* at pp. 191, 199.) Furthermore, her parents were unable to cease the conflict even for the duration of the trial. They did not recognize the destructiveness of their conduct and were unable to change their behavior patterns. (*Id.* at p. 191.) Yet, the court still characterized the record as "by no means overwhelming." (*Id.* at p. 199.) In contrast here, at the time of the hearing, Brison was performing well at school and his behavior was normal. Parents had recognized the inappropriateness of their behavior and were taking steps to resolve the problem.[5]

*In re Shelley J.* (1998) 68 Cal.App.4th 322 [79 Cal.Rptr.2d 922] typifies cases in which dependency based on a finding of emotional harm is upheld. There, Shelley ran away from home, hid from the police and stole from her mother. Both parents exhibited symptoms of mental illness and were not attuned to the needs of their children. The family home was a fire hazard. Psychological evaluations showed that Shelly was acting out due to the deplorable conditions created by her parents. Clearly, we are not faced with such a situation here.

---

[5] *In re Alexander K., supra,* 14 Cal.App.4th 549, which is relied on by the parents, is not relevant to this discussion. It did not address the sufficiency of the evidence showing emotional disturbance, focusing instead on causation. (*Id.* at pp. 558-561.)

This court has not found analogous authority in which a child who has not been physically abused or neglected is removed from both parents' care during a custody battle and placed in nonrelated foster care. *In re Sarah M.* (1991) 233 Cal.App.3d 1486 [285 Cal.Rptr. 374][6] explains why: "[I]f parents' poor communications skills and distrust established a need for [juvenile court intervention, it] could assume or continue jurisdiction in virtually every family law case involving custody or visitation issues." (233 Cal.App.3d at p. 1500.) The family law court is better suited to handling issues relating to custody and visitation. "This is part and parcel of the family law court's role." (*Ibid.*)

We concur with the cogent observations of *In re John W.* (1996) 41 Cal.App.4th 961 [48 Cal.Rptr.2d 899]: "The juvenile courts must not become a battleground by which family law war is waged by other means. It is common knowledge that the resources of local government social service agencies are stretched thin; in the juvenile dependency context those resources are manifestly intended to be directed at neglected and genuinely abused children." (*Id.* at p. 975.) Such "misuse of the juvenile dependency system to litigate custody battles is not only unfair to taxpayers, but to litigants as well." (*Ibid.*) Therefore, "[j]uvenile courts must be vigilant to prevent unsubstantiated allegations of monstrous behavior . . . from becoming a means of leverage in a custody fight, or a ticket to free legal services and psychotherapy." (*Id.* at pp. 975-976.) In sum, "If indeed there is ever a place for it, the place for a custody battle is in the family law courts. There the battle will not consume public resources which are better directed to children who typically do not have the luxury of two functional parents fighting for custody, and where the taxpayers do not have to pick up the tab for lawyers and psychologists." (*Id.* at p. 976, fn. omitted.)[7]

Respondent did not prove that Brison was a dependent child as defined in section 300. Accordingly, we reverse the jurisdictional order. The dispositional order and all subsequent orders are moot.

---

[6]*In re Chantal S.* (1996) 13 Cal.4th 196, 204 [51 Cal.Rptr.2d 866, 913 P.2d 1075] disapproved of *Sarah M.* on another ground.

[7]We note that there is an alternative available to assist children such as Brison, which does not require intervention by respondent. Family Code section 3190, subdivision (a) provides that the court may require parents involved in a custody or visitation dispute and the minor child to participate in mental health counseling if the court finds that a dispute between the parents or between the parent and child poses a substantial danger to the best interest of the child and the counseling is in the best interest of the child. However, it is the parents who shoulder the expense, not the taxpayers.

## DISPOSITION

The judgment is reversed and the case is remanded to the family law court. Costs are awarded to appellants.

Dibiaso, Acting P. J., and Gildner, J.,* concurred.

---

*Judge of the Kern Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.