[No. H018030. Sixth Dist. Dec. 3, 1998.]

In re SHELLEY J., a Person Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND
CHILDREN'S SERVICES, Plaintiff and Respondent, v.
SUSAN J., Defendant and Appellant.

### COUNSEL

Mary Willans-Izett, under appointment by the Court of Appeal, for Defendant and Appellant.

Ann Miller Ravel, County Counsel, and Diane L. Bennett, Deputy County Counsel, for Plaintiff and Respondent.

George W. Kennedy, District Attorney, and Robert J. Masterson, Deputy District Attorney, for Minor.

### OPINION

**MIHARA, J.**—Susan J., the mother of the minor Shelley J., appeals from the jurisdictional and dispositional order of the juvenile court adjudging the

minor a dependent child pursuant to Welfare and Institutions Code section 300, subdivisions (c) and (j), and ordering family maintenance services.[1] She contends the section 300 petition failed to state a cause of action and that there was insufficient evidence for the court to assume jurisdiction over the minor. We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Born on November 9, 1982, the minor is the daughter of Gary J. and appellant. On April 19, 1997, the minor ran away from home. At the time the minor ran away, the home environment presented a serious risk to health and safety. The home was full of raw garbage and so much clutter there were only two narrow passages from the front door to the kitchen.

The minor stayed away from home for approximately four months. During that time she stayed at a shelter for runaway teens, with friends, and with the family of her boyfriend. During this period, the San Jose police brought the minor to the children's shelter on two occasions, but she ran away from the shelter.

Nine days after the minor ran away from home, the minor's 16-year-old sister, Laura J., was placed in protective custody after the San Jose police and an emergency response social worker found that her home presented a health risk, a safety hazard, and a fire hazard to Laura. Laura was subsequently declared a dependent of the court.

The minor returned home on or about August 28, 1997. On September 11, 1997, the department of family and children's services filed a petition alleging that the minor came within the provisions of section 300, subdivisions (b) and (c). The petition was later amended to allege jurisdiction pursuant to section 300, subdivisions (c) and (j). More specifically the amended petition alleged: "The child is suffering, or is at substantial risk of suffering, serious emotional damage evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian and because the child has no parent or guardian capable of providing appropriate care." Supporting facts for these allegations were: "c-1 The minor . . . ran from the family home around April 19, 1997, and when the minor was placed at the Children's Shelter on two occasions she ran from the Children's Shelter; [¶] c-2 further, a San Jose Police Missing Person report was filed in regards to the minor, and the minor hid from San Jose Police, and further while on the run from

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

the home the minor stole a wallet from her mother; [¶] c-3 further, when the minor returned home around August 28, 1997 she was emotionally distraught as she stated to her mother that she would commit suicide if she had to return to the Children's Shelter. . . . [¶] j-1 On April 28, 1997, the minor's sibling, Laura J[], was placed in protective custody by San Jose Police as the home where the minor was residing was assessed by San Jose Police Officers and Emergency Response Social Worker to present a health risk, a safety hazard and fire hazard to the minor; [¶] j-2 further, the home where the minor's sibling, Laura J[], resided was filled with old newspapers and clothes from the floor to the ceiling in some areas and the front door would only open approximately 10 inches; [¶] j-3 further, the kitchen counters were stacked with dirty dishes, the kitchen refrigerator was filled with rotting food; an electrical appliance placed on top of the stove burners had papers and debris on top of it; and electrical outlets were frequently covered by debris; [¶] j-4 further, the bathroom was very unsanitary in that used bathroom tissue was stacked approximately three (3) feet with a hand held dryer placed on top of the tissue; sanitary napkins were on the floor reaching up to the toilet seat; and the floor was covered with a foot of debris; and there was a huge mass of human hair; [¶] j-5 further, said minor's mother has symptoms of being obsessive and compulsive in that she has bought many items at stores using coupons, and credit cards, and did not put the purchases away before buying more items; [¶] j-6 further, said minor's father lives in the garage and he has limited use of his hands; it is unknown whether the hand impairment is physical or psychological; the minor's father is depressed; [¶] j-7 further, said minor's sibling, Laura J[], was sexually assaulted in February 1997 and did not tell her mother of the assault until sometime in April 1997; the minor did not report the sexual assault to the police or receive counseling as she was embarrassed and ashamed by the sexual assault; the minor and her mother were afraid the police would see the house; [¶] j-8 further, sibling, Laura J[], is afraid her mother will suffer from a heart attack, because the minor has been placed in protective custody."

In a report dated October 1, 1997, the social worker stated that since May of 1997, the parents had worked on the family home, so that most of the raw garbage had been removed from the house. The kitchen, family room, and two bedrooms were usable. However, the social worker opined that while there was progress in the physical condition of the house, not much progress had been made in the parents' therapy as to how the situation arose, and how the home could be maintained to offer a healthy environment.

At an October 6, 1997, hearing, the court was so concerned about the hazards of the house that it ordered that the minor not be returned to the home until the health and fire departments had cleared it.

Another hearing was held on October 15, 1997. At that time, the minor's parents waived their rights to a trial as to the jurisdiction of the minor. Appellant was given the opportunity to correct the dates given in the petition when the minor ran away and when she returned. She then waived a formal reading of the petition. Thereafter, the court found the parents understood the nature of the conduct alleged in the petition and the possible consequences of submitting the matter on the basis of the amended petition and the social worker's report. The court found there was a factual basis contained within the social worker's report to sustain the allegations of the amended petition

In an addendum to her previous report, the social worker expressed concern that both parents had symptoms of mental illness. Therefore, she questioned how these symptoms would impact the safety of the minors. On November 12, 1997, the court ordered a psychological evaluation for appellant and her husband. In ordering the evaluations, the court stated that, "we need to look at what the origin of the problem was and what we can do to assist the parents in correcting it, because . . . this case went beyond just simple housekeeping problems."

The psychological evaluations of appellant and her husband, conducted by Peter J. Berman, Ph.D., "revealed significant psychological problems for both individuals. . . . Mr. J[]'s psychiatric diagnosis is Depressive Disorder, Alcoholic Dependence in Full Remission, Dependent Personality Disorder, and Schizotypal Personality Disorder. Ms. J[]'s diagnosis is Obsessive-Compulsive Disorder, and Personality Disorder, Not Otherwise Specified." The evaluation also indicated that the home environment created by the parents led to problems with their daughters. "The behavior of . . . Laura and Shelley, reflects the problems that these[] two teenagers were experiencing at home with both their physical environment and their relationship with their parents. In addition to having to climb over piles of junk to move around their home, there must have been a significant level of embarrassment about not being able to invite anyone to their home. There was also the issue that if the authorities ever found [out] about the condition of their home, that the two daughters would most certainly be removed from their home and placed into protective custody. [¶] Laura and Shelley also had to put up with the constant nagging and bickering back and forth between their parents, and a father who lived in either the garage, or in a sleeping bag under the table. The acting-out behavior of both girls (running away from home, drug use, and sexual promiscuity) was symptomatic of the problems at home that both daughters were experiencing."

The minor's dispositional hearing was held on January 5, 1998, at which time the minor was adjudged a dependent and placed with her parents on a family maintenance plan. This appeal followed.

## DISCUSSION

### Sufficiency of the Pleadings

██ Appellant contends the petition failed to state a cause of action under either section 300, subdivision (c) or (j), a claim that was not raised below. Citing *In re Alysha S.* (1996) 51 Cal.App.4th 393 [58 Cal.Rptr.2d 494], appellant asserts that she may raise this issue for the first time on appeal. We agree with county counsel that *Alysha S.* was wrongly decided on that point. Thus, appellant waived her right to challenge the sufficiency of the allegations of the petition.

In *Alysha S.* the court relied on Code of Civil Procedure section 430.80, subdivision (a) and civil cases for the proposition that a claim challenging the sufficiency of the pleadings may be raised for the first time on appeal. (*In re Alysha S., supra,* 51 Cal.App.4th at p. 397.) The court did not acknowledge that rules applicable to civil cases are not applicable to dependency actions unless expressly made so. "Dependency proceedings in the juvenile court are special proceedings governed by their own rules and statutes. (§ 300 et seq.; Cal. Rules of Court, rule 1440 et seq.) Unless otherwise specified, the requirements of the Civil Code and the Code of Civil Procedure do not apply. (*Jones T.* v. *Superior Court* (1989) 215 Cal.App.3d 240, 245, fn. 3 [264 Cal.Rptr. 4]; *In re Angela R.* (1989) 212 Cal.App.3d 257, 273 [260 Cal.Rptr. 612].)" (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 [17 Cal.Rptr.2d 759], fn. omitted.)

We find no authority that Code of Civil Procedure section 430.80, subdivision (a) applies to dependency actions. Rather, California Rules of Court, rule 39 provides that rules governing criminal cases and appeals apply to juvenile proceedings unless otherwise specified. (See, e.g., *In re Troy Z.* (1992) 3 Cal.4th 1170, 1181 [13 Cal.Rptr.2d 724, 840 P.2d 266] [plea of no contest in juvenile proceeding, as with a plea of nolo contendere in criminal action, waives appellate review].) Accordingly, juvenile cases are governed by Penal Code section 1012, which provides that the failure to demur to defective pleadings waives the defect.

Moreover, waiver is particularly apparent in this case. Appellant expressly waived her right to trial and waived a formal reading of the petition. Thereafter, the court affirmatively found that she understood the nature of the conduct alleged in the petition and the consequences of submitting the matter on the basis of the petition and social worker's report. This is not a due process case where appellant was denied constitutionally adequate notice of allegations which might result in the court asserting jurisdiction.

(See *In re Troy D.* (1989) 215 Cal.App.3d 889, 896 [263 Cal.Rptr. 869].) Consequently, appellant's insufficiency of the pleading claim is barred at this time.

*Sufficiency of the Evidence*

█ Appellant asserts there was insufficient evidence to uphold jurisdiction under either section 300, subdivision (c) or (j). We disagree.

█ "The petitioner in a dependency proceeding must prove by a preponderance of the evidence that the child who is the subject of a petition comes under the juvenile court's jurisdiction. . . . On review, this court will view the juvenile court record in the light most favorable to that court's order. . . . We may not reweigh or express an independent judgment on the evidence, but must decide only whether sufficient evidence supports the findings of the juvenile court. . . . Issues of fact and credibility are matters for the trial court alone; we may decide only ' " "whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact.' . . ." ' " (*In re Amy M.* (1991) 232 Cal.App.3d 849, 859-860 [283 Cal.Rptr. 788], citations omitted.)

█ Section 300, subdivision (c) states that a child who comes within the following description is within the jurisdiction of the juvenile court and may be adjudged a dependent thereof: "The minor is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care. . . ."

"The statute thus sanctions intervention by the dependency system in two situations: (1) when parental action or inaction causes the emotional harm, i.e., when parental fault can be shown; and (2) when the child is suffering serious emotional damage due to no parental fault or neglect, but the parent or parents are unable themselves to provide adequate mental health treatment. [¶] In a situation involving parental 'fault,' the petitioner must prove three things: (1) the offending parental conduct; (2) causation; and (3) serious emotional harm or the risk thereof, as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior." (*In re Alexander K.* (1993)14 Cal.App.4th 549, 557 [18 Cal.Rptr.2d 22].)

█ Dr. Berman's evaluations provided substantial evidence upon which the juvenile court could conclude the minor should be adjudged a

dependent pursuant to section 300, subdivision (c). The petition stated that the minor was suffering severe anxiety, depression, withdrawal, or untoward aggressive behavior toward herself or others. This description of the minor was evidenced by her running away from home, hiding from the police and stealing a wallet from appellant. Dr. Berman described such behavior as "acting out." He attributed the "acting out" behavior to the deplorable unhealthy, unsafe, and embarrassing home conditions created by appellant and her husband. The psychologist specifically stated that, "Shelley's chronic running away must be viewed as symptomatic of some problems that she perceives at home."

There was also substantial evidence that the minor had no parent capable of providing appropriate care. In addition, his diagnosis of appellant and her husband, Dr. Berman stated the minor's parents were "not particularly attuned to the needs of their daughters."

Having concluded there was substantial evidence to support the court's determination that the minor came within the provision of section 300, subdivision (c), we need not address appellant's claim that there was insufficient evidence to find jurisdiction under section 300, subdivision (j). Section 300 contemplates that jurisdiction may be based on any single subdivision.

## DISPOSITION

The order is affirmed.

Bamattre-Manoukian, Acting, P. J., and Wunderlich, J., concurred.

A petition for a rehearing was denied December 28, 1998, and appellant's petition for review by the Supreme Court was denied March 9, 1999.