[No. B141651. Second Dist., Div. Two. Oct. 4, 2000.]

EDGAR O., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

**COUNSEL**

R. Ross Jacinto for Petitioner.

No appearance for Respondent.

Lloyd W. Pellman, County Counsel, and David Beaudet, Deputy County Counsel, for Real Party in Interest.

## Opinion

**NOTT, J.**—Edgar O., the father of Andrew, Edgar, and Cynthia, who are dependents of the juvenile court, petitions for extraordinary relief pursuant to California Rules of Court, rule 39.1B, seeking review of the juvenile court's May 17, 2000 order that no reunification services be provided to him, and setting a permanency planning hearing for the children pursuant to Welfare and Institutions Code section 366.26.[1] We conclude that the order denying reunification services and setting the section 366.26 hearing is consistent with statute and supported by substantial evidence. Accordingly, we deny the petition.

### I. Procedural Background and Facts

Petitioner is the father of Andrew, age nineteen months, Edgar, age four, and Cynthia, age seven. He is incarcerated and awaiting trial on charges that he murdered the children's mother, Lisa U., on October 16, 1999, and has been in custody since the day of the murder.

On October 29, 2000, the Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition on behalf of Andrew, Edgar, and Cynthia under section 300, subdivisions (a), (b), (c), (g), and (i) alleging that petitioner: (1) shot and killed Lisa U. on October 16, 1999; (2) battered Lisa U. earlier in October, in the children's presence; (3) engaged in a pattern of domestic violence; (4) demonstrated a history of substance abuse; and (5) left the children without provision for support due to his incarceration.

On December 9, 1999, the children were ordered placed with their maternal great-grandmother, family reunification services were ordered, and the matter was continued for a December 10, 1999 hearing. In its report for the December 10, 1999 hearing, DCFS recommended, inter alia, against visitation between petitioner and the children, and recommended that no reunification services be provided. Contrary to DCFS's recommendations, the court ordered DCFS to provide family reunification services and ordered relatives to arrange for the children to visit petitioner in jail.

On December 23, 1999, a hearing was held as a result of a letter from the children's therapist which strongly advised against visitation, and visitation was terminated. The therapist's letter explained that a meeting with petitioner would be detrimental to all three children's mental health, because: (1)

---

[1]All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

all three children had been traumatized and were suffering symptoms of posttraumatic stress syndrome from witnessing petitioner batter their mother shortly before she was murdered; (2) Cynthia and Edgar believe that petitioner murdered their mother, and their attachment to petitioner had been severely disrupted; and (3) Cynthia and Edgar, who were depressed over the loss of their mother and are fearful of petitioner, would be at high risk of re-traumatization and deepened depression were they required to see petitioner again, and to visit at jail.

On April 25, 2000, the court sustained an amended dependency petition under section 300, subdivisions (b), (c), and (g) which found true that: (1) petitioner had shot Lisa U., the children's mother, on October 16, 1999; (2) earlier in October all three children had been present when petitioner hit Lisa U. in the stomach, pulled her hair, threatened to harm her with a knife, and threatened to hurt Cynthia if she went for help; (3) petitioner engaged in a pattern of violence against the children's mother, in incidents in which he would gain entry to her home by breaking in; (4) petitioner had a history of substance abuse and numerous arrests on drug-related charges; and (5) petitioner's incarceration left the children without provision for their support.

On May 15, 2000, DCFS filed a report that related that petitioner had had a preliminary hearing on May 4, 2000, was scheduled to be arraigned on May 18, 2000, and that he faced a possible sentence of 50 years to life. The report reiterated the children's therapist's detailed opinion of the emotional injuries suffered by Andrew, Edgar, and Cynthia, and their need to separate from petitioner, whom they feared. The report recommended that family reunification services to petitioner end, and that a section 366.26 hearing be set to consider termination of parental rights and planning for adoption.

On May 17, 2000, a hearing was held, and the court found clear and convincing evidence of detriment to the children, and no reasonable means to protect them without removal from their father's custody. The court ordered no visitation for petitioner, and pursuant to section 361.5, subdivision (e)(1), no family reunification services to him.

## II. Petitioner's Contentions

Petitioner contends that the court erred as a matter of law in denying him reunification services, because section 361.5, subdivision (e)(1) is inapplicable to a parent who is incarcerated awaiting trial, but who is not serving a sentence for a crime. He also contends that the section 361.5, subdivision (e)(1) requires the court to make a specific finding regarding the term of his incarceration.

## III. DISCUSSION

We find the interpretation of section 361.5, subdivision (e)(1) urged by petitioner to be contrary to the plain meaning of the statute, as explained below.

A.. *Section 361.5, subdivision (e)(1) applies to an incarcerated parent, whether or not sentenced.*

Section 361.5, subdivision (e)(1) states, in pertinent part: *"If the parent* or guardian *is incarcerated* or institutionalized, *the court shall order reasonable services, unless the court determines, by clear and convincing evidence, those services would be detrimental to the child.* In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, and any other appropriate factors." (Italics added.)

Petitioner argues that where section 361.5, subdivision (e)(1) says, "if the parent or guardian is incarcerated," it means "incarcerated, convicted, and sentenced." He states that because the Welfare and Institutions Code does not define "incarcerated," the meaning of the word is to be ascertained by rules of statutory construction. Rules of statutory construction, however, inform us that where a word is unambiguous it does not require statutory definition. (*Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 269 [284 Cal.Rptr. 718, 814 P.2d 704].) The plain meaning of incarcerated is jailed. Webster's Third New International Dictionary (1993) page 1141 defines "incarcerated" as "imprisoned" or "confined." In determining legislative intent, we "must look first to the words of the statute themselves, giving to the language its usual, ordinary import . . . ." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

Petitioner argues that because length of sentence is among the section 361.5, subdivision (e)(1) factors that a court must consider in determining whether to order reunification services, we must read "incarcerated" as meaning "incarceration following imposition of sentence."

Both logic and established canons of statutory construction compel us to reject petitioner's argument. While "length of sentence" presupposes a conviction or plea bargain, it does not follow that section 361.5, subdivision

(e)(1) is inapplicable to a parent who, while incarcerated, has not been convicted and sentenced. Section 361.5 subdivision (e)(1) does not require that each listed factor exist in any particular case, nor does it specify how much weight is to be given to a factor bearing on detriment, listed or not.

■ Canons of statutory construction prohibit courts from inserting words into a statute under the guise of statutory interpretation. (*Kirkwood v. Bank of America* (1954) 43 Cal.2d 333, 341 [273 P.2d 532]). ■ The Legislature did not say that section 361.5, subdivision (e)(1) was applicable to "incarcerated, convicted, and sentenced or institutionalized parents," and we are not free to add what they omitted. (*In re Hoddinott* (1996) 12 Cal.4th 992, 1002 [50 Cal.Rptr.2d 706, 911 P.2d 1381]; Code Civ. Proc., § 1858.)

We presume that the Legislature deliberately distinguished between "incarceration," "conviction," and "sentence" in section 361.5. That presumption is supported by subdivision (b)(11) of section 361.5, which lists among the circumstances in which the court may decline to offer reunification services "convict[ion] of a violent felony." Had the Legislature intended section 361.5, subdivision (e)(1) only to apply to incarcerated parents following their conviction of a crime, it would have so stated.

■ Finally, in determining legislative intent, our responsibility is to construe the words of a statute "in context in light of the nature and obvious purpose of the statute [in which] they appear. [Citation.]" (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 354 [257 Cal.Rptr. 356]). ■ Parents who are incarcerated or institutionalized are confined, and in our view the obvious purpose of section 361.5, subdivision (e)(1), which applies to a parent who is "incarcerated or institutionalized," is to address reunification services in cases where parents are not at liberty to come and go or to schedule activities as they please.

Accordingly, we decline petitioner's invitation to add the words "and sentenced" where the Legislature has not done so, and construe "incarcerated" as meaning "imprisoned or confined," according to its plain meaning. We similarly decline to add a requirement, absent from section 361.5, subdivision (e)(1), that the court make a finding regarding the length of petitioner's sentence.

We conclude that section 361.5, subdivision (e)(1) was properly applied to petitioner, who was incarcerated awaiting trial.

B. *Substantial evidence supports the court's finding that reunification services would be detrimental to the children.*

The juvenile court accorded significant weight to three of the factors listed in section 361.5, subdivision (e)(1), "nature of the crime," "age of the

children," and "degree of parent-child bonding" in determining that family reunification services to petitioner would be detrimental to the children. The court's decision was informed by the reports of the children's therapist, who elaborated in excruciating detail the harm to the children caused by petitioner's violence, and the trauma caused by their mother's death at petitioner's hands.

We understand petitioner, in resting his assignment of error exclusively on the construction of section 361.5, subdivision (e)(1), to concede the evidentiary basis for the court's findings that provision of reunification services to him would be harmful to the children. Accordingly, we will not recite the evidence establishing the breadth and depth of detriment to the children posed by extending reunification services to petitioner, and simply confirm that our review of the record shows this finding to have been supported by clear and convincing evidence.

## IV. DISPOSITION

The petition for writ of mandate is denied, and the order to show cause is discharged.

Boren, P. J., and Cooper, J., concurred.