[No. B156096. Second Dist., Div. Five. Dec. 17, 2002.]

In re JAMES C. et al., Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Plaintiff and Respondent, v.
JOHN D., Defendant and Appellant.

**COUNSEL**

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant.

Lloyd W. Pellman, County Counsel, and Jacklyn K. Louie, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

### I.  INTRODUCTION

John D. (the father) challenges juvenile court jurisdictional and dispositional orders finding his children, James C. (born July 1995) and S.D. (born

May 1997), dependents of the court pursuant to Welfare and Institutions Code[1] section 300, subdivisions (b) and (g). The father contends the jurisdictional order should be reversed. The father argues the allegations of the petition were insufficient to support a jurisdictional determination based on his incarceration and there is no substantial evidence to support the findings. We conclude that the father has waived the right to challenge the sufficiency of the juvenile court petition allegations; nonetheless, the allegations were sufficient to confer jurisdiction on the juvenile court; and substantial evidence supports the jurisdictional and dispositional findings. Accordingly, the juvenile court orders are affirmed.

## II. BACKGROUND

James and S.D., along with their half siblings, Angel A. (born September 1999) and Victoria A. (born November 2000), came to the court's attention on June 20, 2001, when the Los Angeles County Department of Children and Family Services (the department) filed a section 300 petition on their behalf. John D. is not the father of Angel and Victoria, who are not the subjects of this appeal. The petition alleged that the mother of all four children had created a detrimental home environment for the children in that, on or about June 15, 2001, and prior occasions, the family residence was found in a filthy and unsafe condition. The conditions included: a nonfunctioning toilet with feces and urine on the floor; flea and scabies infestation; a filthy carpet; clutter to such a degree that entering and leaving the residence was difficult; the backyard was overgrown with flammable dry shrubbery and old paper; and the backyard was littered with beer cans, old toys, and bicycles. It was alleged that the mother's conduct endangered the children's physical and emotional health and safety and placed them at risk of physical and emotional harm and damage. It was further alleged: the children were found in a filthy and unkempt condition including six-month-old Victoria who had a severe diaper rash and dirt around her neck and under her fingernails; the mother knowingly allowed a registered sex offender, the children's maternal stepgrandfather, Claude N., to reside in the home; Claude N. had unmonitored access to the children; five-year-old James was allowed to wander in the street and alley without adult supervision; and James and S.D. had been returned to the home by law enforcement for wandering outside the residence without adult supervision.

The detention report stated the case social worker received a referral concerning the family on May 10, 2001. The referral stated in part that: the

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

children were neglected by the mother; "the house is horrible as it is a pig house"; the house was full of scabies because feces and urine were all over the toilet, which was not flowing properly; there were feces all over the house; Mr. N. was a convicted felon who had two guns including a loaded firearm which was in the proximity of the children; and the children roamed around the neighborhood unsupervised. The reporting party had called the health and fire departments and other local agencies but none had responded to help the children.

The social worker spoke with the mother on May 15, 2001. The mother admitted the family had scabies. However, the mother claimed that James had caught scabies at school. The social worker observed that: the home was unclean and unkempt; the rooms were very cluttered so that the social worker was unable to walk inside; and the carpet was very soiled. The mother cared for the elderly maternal great-grandmother who had recently had a stroke and was hospitalized. The mother said that relatives had made the report of unkempt conditions in the residence to the authorities in order to gain control of the great-grandmother's home.

The maternal grandmother admitted that the family had scabies but had been treated by a doctor. She also stated that James brought the scabies home from school. The maternal grandmother had two children who also lived in the home. The two children were ages 11 and 12 at the time the June 20, 2001, detention report was prepared. The mother and the maternal grandmother attributed the feces on the restroom floor to the maternal great-grandmother who was ill and would "miss the toilet" because of severe arthritis. Both the mother and maternal grandmother denied that there were weapons in the residence and the children roamed around unsupervised.

The maternal stepgrandfather, Claude N., admitted he was a convicted felon who was on probation for failing to register as a sex offender. (Pen. Code, § 290.) Claude N. stated that his probation conditions were such that he could be around children as long as someone in the home was over 18 years old. Claude N.'s probation officer, identified only as Ms. H. Lewis, stated that there was nothing in the minute order that he could not be around children. On June 13, 2001, the social worker spoke with Ms. Lewis regarding the probationary grant. Ms. Lewis stated that she had no knowledge that children were living in the home. Ms. Lewis was told that the mother did not live in the home and the children were cared for in Claude N.'s residence. On June 5, 2001, the mother told a social worker that to avoid the removal of the children from the home because of the risk from a registered sex offender, Claude N. would leave. However, on June 15, 2001, the social worker found Claude N. sleeping in one of the rooms. The

children were then detained. Prior to the June 15, 2001, detention, the social worker observed James roaming unsupervised in the alley and down the street several times while the mother, the maternal grandmother, and the maternal stepgrandfather were at home.

James denied that anyone had sexually abused him. James had several bad front teeth. Relatives stated that James, who was five years old, threatened to take a gun and kill his great-grandmother and then stab her with a knife until she died. James had no contact with the father, who was incarcerated.

As noted above, on June 20, 2001, the department filed a petition alleging the children were persons described by section 300, subdivision (b). The petition alleged that detention was necessary because the mother's conduct created a detrimental home environment due to: the unsanitary and unsafe condition of the residence; the children were unkempt and dirty; the maternal stepgrandfather, a registered sex offender, was allowed to live in the home; and the children were allowed to wander around the neighborhood unsupervised. There were no allegations about the father in the June 20, 2001, petition. On June 20, 2001, the juvenile court ordered the children detained. The department was ordered to conduct a due diligence search for the father.

On June 29, 2001, the department reported the children remained in foster care. The department reported on the condition of the mother's home. The mother had made some improvements in cleaning the home. However, the home was still cluttered to such an extent that the social worker could not enter the room the children had lived in before they were detained. The backyard was piled with debris that the State Department of Health Services had ordered the mother to eliminate.

On August 1, 2001, the department reported that the father was incarcerated at the California Men's Colony in San Luis Obispo. James had never seen the father. James had cavities, rotten teeth, and head lice. Angel, the mother's youngest son, also had tooth decay and head lice. James, Angel, and Victoria were treated for skin rash. The home, including the backyard, had been organized somewhat but remained cluttered. The two boys, James and Angel, had been placed with one another in one foster home. The two girls, S.D. and Victoria, had been placed together in another foster home. The mother was not visiting the children on a regular basis. The mother blamed difficulties with: the foster family agency; the department; and the foster parents. The foster parents reported that the mother had not contacted them. The father was incarcerated and unable to care for the children.

On September 13, 2001, the department filed a first amended petition, which named both the mother and father. The first amended petition alleged

that the father was incarcerated in state prison and unable to provide James and S.D. with the basic necessities of life including adequate food, clothing, shelter, and medical treatment. With respect to the father, it was alleged that James and S.D. were dependents of the court pursuant to section 300, subdivisions (b) and (g). The allegations as to the mother in the original petition were repeated in the amended petition. The original June 20, 2001, petition was dismissed.

In an interim review report, the department reported that the boys remained together in one foster home. The girls remained together in a separate foster home. The mother stated that her home was in worse condition than it was when the children were detained. The mother was not consistently visiting the children. The father had an expected release date from prison of June 29, 2003. The department recommended no family reunification services be provided to the father pursuant to section 361.5 subdivisions (a)(2) and (e)(1) because the duration of his anticipated incarceration exceeded the length of time family reunifications services would be provided.

On October 25, 2001, the department reported that the father had initially signed a waiver stating he was not interested in attending the adjudication and disposition hearing. However, the father subsequently changed his mind and wanted to be present for the hearing. The mother had been advised that the stepgrandfather could not live in the home if the children returned. But Claude N.'s probation officer, Ms. Lewis, stated that he continued to reside in the mother's home. On October 15, 2001, the department received the results of a sexual abuse exam completed on S.D. The results were consistent with the conclusion she had experienced sexual abuse. The results showed "abnormal findings in [S.D.'s] [posterior] fourchette, perianal skin, and anal verge/folds/fugae, which are consistent with healed anal and possible [posterior] fourchette trauma." At the October 25, 2001, hearing, counsel was approved for the father.

On December 5, 2001, the department filed a second amended petition. The September 13, 2001, first amended petition was dismissed. The second amended complaint alleged the father had a criminal history of violent and drug-related felony convictions. The father's current incarceration was for: an aggravated assault (Pen. Code, § 245, subd. (a)(1)); infliction of great bodily injury (Pen. Code, § 12022.7, subd. (a)), and a prior prison term enhancement. (Pen. Code, § 667.5, subd. (b).) The children's physical and emotional health and safety were alleged to be at risk from the father's conduct.

In an interim review report, the department reported that James had been inappropriately touching Angel and stealing items from the foster home. The department elaborated on the father's criminal conduct that caused his current period of incarceration resulting from a 1996 nine-year sentence for aggravated assault, a finding he inflicted great bodily injury on the victim, a girlfriend, and two 1-year prior prison term enhancements. The nine-year sentence was imposed after the father slammed the woman's head into a wall telling the victim he would kill her. The woman had such deep extensive bruising on her side and stomach area that the doctor stated the X-rays were inconclusive regarding fractures. The girlfriend had lacerations on the top of her head, one approximately six inches long. The other laceration was approximately four to five inches long.

The father appeared at the December 5, 2001, hearing and waived his appearance for the next court hearing. The father informed the court that his release date was in 2003. The court dismissed the first amended petition and filed the second amended petition. The matter was continued to January 14, 2002, for mediation and January 24, 2002, for adjudication.

On January 14, 2002, the department reported that the mother and maternal grandmother were interviewed about the sexual abuse allegations. The maternal grandmother stated that her husband was arrested for oral copulation with a minor but stated the allegations were untrue. Although it was a consistent recommendation throughout the case, the mother and maternal grandmother stated they had not been given a referral for sexual abuse counseling. The maternal stepgrandfather, Claude N., continued to reside in the home. When S.D. was interviewed about the sexual abuse allegations, she could not identify private parts but was able to name the buttocks (bottom). S.D. stated the stepgrandfather had "tickled" her bottom. She said, it did not hurt, just tickled her. At that point, S.D. did not want to talk any further and changed the subject. On January 24, 2002, the parties entered into a mediation agreement concerning the December 5, 2001, second amended petition. The father did not sign the mediation agreement.

On January 25, 2002, the department filed a third amended petition, which reflected the changes agreed upon in mediation. The third amended petition contained the same allegations against the father that had been in the second amended petition. At the January 25, 2002, adjudication hearing, the court dismissed the December 5, 2001, second amended petition and filed the third amended petition. A social worker, Edward Fithyan, spoke with the father's prison counselor. Mr. Fithyan had not spoken with the father. Mr. Fithyan testified the petition was filed against the father due to: the father's incarceration and the charges for which he was incarcerated; the father's incarceration caused the children to be neglected; and the father was unavailable

to take care of the children. Mr. Fithyan was unaware of any evidence that the father had ever physically hurt either of the children. Court and Department of Corrections records demonstrated: defendant has been convicted on two separate occasions of Penal Code section 667.5, subdivision (c) violent felonies; he has now been convicted of a total of seven felonies; and his presently calculated release date was beyond the period of time reunification services could be provided.

At the conclusion of the adjudication hearing, the juvenile court sustained the allegations of the third amended petition as it related to the father under section 300 subdivisions (b) and (g). With respect to the section 300, subdivision (b) finding, the sustained petition provided: "Count b-5: . . . [The] father, John [D.] is currently incarcerated in the state prison and is unable to provide the children with the basic necessities of life including, but not limited to, adequate food, clothing, shelter and medical treatment, thereby endangering the children's physical and emotional safety and placing the children at risk of serious harm." The sustained petition further alleged: "Count b-8: . . . [The] father, John D., has a criminal history of violent and drug related felony convictions. The father is currently incarcerated in state prison on charges of 245(A)(1) [of the Penal Code]—Assault with a deadly weapon with great bodily injury, 12022.7 (A) [of the Penal Code]—Infliction of great bodily injury, and 667.5 (b) [of the Penal Code]—Enhancement of prison term for new offenses. Said conduct on the part of the children's father endangers the children's physical and emotional health and safety and places the children at risk of physical and emotional harm, damage and danger." The juvenile court sustained the allegations James and S.D. were dependents of the juvenile court under section 300, subdivision (g) based on the father's incarceration and failure to provide care for or support the children. The findings with respect to this issue were: "[The] father, John [D.], is currently incarcerated in state prison and is unable to provide the children with the basic necessities of life including but not limited to adequate food, clothing, shelter and medical treatment, thereby endangering the children's physical and emotional safety and placing the children at risk of serious harm." The trial court ordered no family reunification services be provided to the father pursuant to section 361.5, subdivisions (b)(12), (c), and (e)(1). The father filed a timely notice of appeal from the court's jurisdictional findings and dispositional orders.

## III. Discussion

### A.  *The Sufficiency of the Third Amended Petition*

The father claims the jurisdictional findings cannot be upheld because the allegations of the third amended petition were insufficient to support findings of juvenile court jurisdiction under section 300, subdivisions (b) and

(g). ■ A challenge to the sufficiency of a petition is treated as a demurrer. (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1133 [106 Cal.Rptr.2d 465]; *In re Alysha S.* (1996) 51 Cal.App.4th 393, 397 [58 Cal.Rptr.2d 494].) A reviewing court construes the well-pleaded facts in favor of the petition and determines whether a basis for jurisdiction is stated. (*In re Janet T.* (2001) 93 Cal.App.4th 377, 386 [113 Cal.Rptr.2d 163]; *In re Nicholas B.*, *supra*, 88 Cal.App.4th at p. 1133.) In the dependency scheme, the petition is examined for whether essential facts have been pleaded which establish "at least one ground of juvenile court jurisdiction." (*In re Alysha S.*, *supra*, 51 Cal.App.4th at pp. 399-400.) The department argues this argument has been waived by the failure to challenge the sufficiency of petition allegations in the juvenile court. Alternatively, the department claims the petition was sufficient.

■ There is a split of authority on whether a parent waives the right to challenge the sufficiency of the allegations in a dependency petition on appeal after failing to raise the issue by demurrer or other procedural mechanism in the juvenile court. In the case of *In re Alysha S.*, *supra*, 51 Cal.App.4th at page 397, it was concluded that no demurrer need be filed to raise an issue of the factual sufficiency of a petition on appeal. (See also *In re Nicholas B.*, *supra*, 88 Cal.App.4th at pp. 1132-1133 [challenge to sufficiency of petition is equivalent to claim of failure to state a cause of action and is not a substantial evidence issue].) *Alysha S.* concluded a challenge to the sufficiency of a petition in a dependency proceeding is in the nature of a demurrer in a civil action. (Accord, *In re Nicholas B.*, *supra*, 88 Cal.App.4th at p. 1113.) Citing Code of Civil Procedure section 430.80, subdivision (a), *Alysha S.* concluded that, in a dependency case, the rule regarding the failure to object to a civil complaint by demurrer or answer is that the party is deemed to have waived the objection unless the petition does not state a cause of action. (*In re Alysha S.*, *supra*, 51 Cal.App.4th at p. 397.) Thus, *Alysha S.* concluded no waiver occurs when the issue raised on appeal is that the petition does not state a cause of action. (*Ibid.*)

By contrast, the decision of *In re Shelley J.* (1998) 68 Cal.App.4th 322, 328 [79 Cal.Rptr.2d 922], concluded that demurrer was required or the factual sufficiency issue was waived on appeal. *Shelley J.* concluded that dependency proceedings are not controlled by the Code of Civil Procedure but by the Penal Code. Penal Code section 1012 provides, "When any of the objections mentioned in Section 1004 appears on the face of the accusatory pleading, it can be taken only by demurrer, and the failure so to take it shall be deemed a waiver thereof, except that the objection to the jurisdiction of the court and the objection that the facts stated do not constitute a public offense may be taken by motion in arrest of judgment." In explaining why

*Alysha S.* was incorrect, *Shelley J.* noted: "[*Alysha S.*] did not acknowledge that rules applicable to civil cases are not applicable to dependency actions unless expressly made so. 'Dependency proceedings in the juvenile court are special proceedings governed by their own rules and statutes. (§ 300 et seq.; Cal. Rules of Court, rule 1440 et seq.) Unless otherwise specified, the requirements of the Civil Code and the Code of Civil Procedure do not apply. (*Jones T.* v. *Superior Court* (1989) 215 Cal.App.3d 240, 245, fn. 3 [264 Cal.Rptr. 4]; *In re Angela R.* (1989) 212 Cal.App.3d 257, 273 [260 Cal.Rptr. 612].)' (*In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711 [17 Cal.Rptr.2d 759], fn. omitted.) [¶] We find no authority that Code of Civil Procedure section 430.80, subdivision (a) applies to dependency actions. Rather, California Rules of Court, rule 39 provides that rules governing criminal cases and appeals apply to juvenile proceedings unless otherwise specified. (See, e.g., *In re Troy Z.* (1992) 3 Cal.4th 1170, 1181 [13 Cal.Rptr.2d 724, 840 P.2d 266] [plea of no contest in juvenile proceeding, as with a plea of nolo contendere in criminal action, waives appellate review].) Accordingly, juvenile cases are governed by Penal Code section 1012, which provides that the failure to demur to defective pleadings waives the defect." (*In re Shelley J., supra,* 68 Cal.App.4th at p. 328.)

We agree with the reasoning in *Shelley J.* Moreover, the reasoning is supported by reference to section 348, which states that the Code of Civil Procedure provisions for variance and amendment to pleadings in civil actions apply to petitions and dependency proceedings under the Welfare and Institutions Code. Section 348 provides, "The provisions of Chapter 8 (commencing with Section 469) of Title 6 of Part 2 of the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions shall apply to petitions and proceedings under this chapter, to the same extent and with the same effect as if proceedings under this chapter were civil actions." The incorporated provisions of Code of Civil Procedure allow amendments to pleadings when a demurrer is sustained. (Code Civ. Proc., § 469 et seq.) Code of Civil Procedure section 430.80 is in part 2, title 6, chapter 2, article 1, of that code. Code of Civil Procedure section 430.80, which allows a pleading deficiency to be raised for the first time on appeal, is not in "Title 6 of Part 2" which applies to juvenile proceedings pursuant to section 348. The provisions relating to the grounds for demurrer, specifically the failure to object to a pleading contained in Code of Civil Procedure section 430.80, upon which *Alysha S.* relied to support its conclusion, is not incorporated into the dependency statutes. Accordingly, the father's failure to challenge the sufficiency of the pleading has been waived. (Pen. Code, § 1012; Cal. Rules of Court, rule 39; *In re Shelley J., supra,* 68 Cal.App.4th at p. 328.)

■ However, even if the issue had not been waived, no basis for reversal exists regarding the failure of the third amended petition to state a cause of

action. The third amended petition presented as grounds for jurisdiction the mother's conduct in allowing James and S.D. to be in a filthy and unsanitary condition; the mother allowing the children to live in the home with a convicted sex offender; the father's incarceration and failure or inability to provide for the children; and the father's criminal history, which included a violent felony conviction.

The allegations against the mother were sustained and she has not appealed the jurisdictional findings or the order. The court could declare jurisdiction over the children based on the actions of the mother alone. (§ 302, subd. (a); *In re Alysha S., supra,* 51 Cal.App.4th at p. 397; see also *In re Nicholas B., supra,* 88 Cal.App.4th at p. 1135 ["a finding against one parent is a finding against both in terms of the child being adjudged a dependent"].) The rationale for the rule is that the dependency law is based on protection of the children rather than punishment of the parent. (*In re Alysha S., supra,* 51 Cal.App.4th at p. 397, citing *In re Jeffrey P.* (1990) 218 Cal.App.3d 1548, 1553-1554 [267 Cal.Rptr. 764].)

With respect to the father, the third amended petition sufficiently alleged that he was incarcerated and unable to provide care for the children. The third amended petition also alleged the father's criminal history, which involved drugs and violence, could endanger the children's welfare. The father's most recent conviction was alleged to be an assault with a deadly weapon with the infliction of great bodily injury, which is a serious felony. The allegations were sufficient on their face. (§ 300, subds. (b), (g).)

### B. *The Sufficiency of the Evidence*

The father claims that there was no substantial evidence to support the juvenile court's jurisdictional findings under section 300, subdivision (b). The section 300, subdivision (b) finding was that James and S.D. could suffer serious physical harm as a result of the father's failure or inability to protect the children. The father also challenged the section 300, subdivision (g) finding that he was incarcerated or did not know how to make or was physically or mentally incapable of making preparations or plans for the care of James and S.D. The juvenile court's findings are reviewed for substantial evidence to support the findings. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1649 [54 Cal.Rptr.2d 722]; *In re Joshua H.* (1993) 13 Cal.App.4th 1718, 1728 [17 Cal.Rptr.2d 282].)

Substantial evidence supports the juvenile court's section 300, subdivision (b) finding that the children did or may suffer serious physical harm as a result of the father's failure or inability to protect or supervise

them. Section 300, subdivision (b) provides that the juvenile court may adjudge a child a dependent of the juvenile court when "The child had suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, [and] shelter . . . ." The record shows the children were living in a home that was described by one observer as a "pig house"; there were two families living in a three-bedroom home with one toilet; the toilet was covered with feces; the home had feces and urine on the floors; the home was so cluttered that a social worker could not get into a room; and the children, who were filthy, had scabies. S.D. said that she had bugs in her head. No doubt, the mother washed S.D.'s hair. But the mother only washed the child's hair the day before S.D. was detained. The other children were filthy when they were detained and were subsequently diagnosed with head lice and skin rashes. There was evidence that James, who was five years old when he was detained, was allowed to wander around streets and alleys unsupervised. The mother also allowed a convicted sex offender to live in the home with the children. The mother admitted that she knew the conviction was based on the oral copulation of his own 11-year-old daughter. Medical records suggested that S.D. had been sexually molested in the anal region. When questioned, S.D. stated that her stepgrandfather, a convicted child molester, had "tickled" her in the area. James was also found touching his younger brother inappropriately. The father, who was incarcerated, had never met James. According to James, S.D. had seen the father once.

Because the father was incarcerated, he was not able to adequately protect the children from the deplorable home conditions. Being incarcerated, the father was unable to supervise the children. While the father claims that his incarceration should not be used as evidence of "willful or negligent" failure to adequately protect or supervise his children from these conditions, there is no evidence that he made any arrangements to have anyone even make inquiries about the supervision of the youngsters while he was incarcerated. The father presented no evidence he had ever made inquiries about the care or supervision of the children. All arrangements for the children's care had been made by the department. The father also did not offer any evidence that he had made any alternative arrangements for the children once their circumstances were made known to him. Those circumstances included a filthy home, untreated medical and dental conditions, living in a residence with a convicted sex offender, and lack of supervision of toddlers. The juvenile

court could infer that the father was either unable or unwilling to arrange for the care of the children.

The father also claims that there was insufficient evidence that his incarceration was a basis to support the finding under section 300, subdivision (g). Section 300, subdivision (g) provides the juvenile court may adjudge any child a dependent child if "The child has been left without any provision for support; . . . the child's parent has been incarcerated or institutionalized and cannot arrange for the care of the child; or a relative or other adult custodian with whom the child resides or has been left is unwilling or unable to provide care or support for the child . . . ." The decision of *In re Aaron S.* (1991) 228 Cal.App.3d 202, 208 [278 Cal.Rptr. 861], concluded, "[S]ection 300, subdivision (g) applies when, at the time of the hearing, a parent has been incarcerated and does not know how to make, or is physically and mentally incapable of making, preparations for the care of his or her child." (See also *In re Monica C.* (1995) 31 Cal.App.4th 296, 304-305 [36 Cal.Rptr.2d 910].) According to the father, the *Aaron S.*, standard has not been met because there is no evidence that he did not know how to make or was physically or mentally capable of making preparations or plans for the care of the children. We disagree. The record shows that the father was incarcerated all of the children's lives. There is no evidence he ever attempted to care for the children during their lifetimes. The absence of evidence suggesting that the father was ever interested in the welfare of the two toddler children during the entire time of his incarceration was sufficient for the juvenile court to infer that he either could not or was incapable of making preparations for their care. Thus, substantial evidence supports the juvenile court's determination that, with respect to the father, jurisdiction was appropriate under section 300, subdivision (g).

### C. *The Dispositional Order Denying Reunification Services*

■ The father also claims that the order denying him reunification services must be set aside. ■ We examine the court's determination denying reunification services for substantial evidence. (*Edgar O. v. Superior Court* (2000) 84 Cal.App.4th 13, 18-19 [100 Cal.Rptr.2d 540]; *In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75 [82 Cal.Rptr.2d 493]; *Raymond C. v. Superior Court* (1997) 55 Cal.App.4th 159, 164 [64 Cal.Rptr.2d 33]; *In re Rebekah R.* (1994) 27 Cal.App.4th 1638, 1653 [33 Cal.Rptr.2d 265].)

■ The trial court found that reunification services were unwarranted pursuant to section 361.5, subdivisions (b)(12) and (e)(1). Section 361.5, subdivision (b)(12) provides that reunification services need not be provided if the parent has been convicted of a violent felony as defined by Penal Code

section 667.5 subdivision (c). Section 361.5, subdivision (b)(12) states: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (12) That the parent or guardian of the child has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code." Also, section 361.5, subdivision (e)(1) states reunification services must be ordered even if the parent is incarcerated unless the court determines "by clear and convincing evidence, those services would be detrimental to the child." (*In re Precious J.* (1996) 42 Cal.App.4th 1463, 1472 [50 Cal.Rptr.2d 385]; *In re Cicely L.* (1994) 28 Cal.App.4th 1697, 1702 [34 Cal.Rptr.2d 345].) Detriment is determined by reference to: the child's age; the degree of bonding between the parent and the child; the length of the sentence; the nature of the crime; and the degree of detriment to the child in the absence of services. (§ 361.5, subd. (e)(1).) Section 361.5, subdivision (e)(1) further provides that, if reunification services are ordered, the services are subject to the applicable time limits imposed by section 361.5, subdivision (a). Section 361.5, subdivision (a) limits reunification services to 12 months for children 3 years of age or older and 6 months for under the age of 3 years.

First, reunification services may be denied pursuant to section 361.5, subdivision (b)(12) because the father has been convicted of a violent felony. In fact, he had been convicted of a violent felony on two occasions. The father has been convicted of robbery with firearm use, a violent felony. (Pen. Code, §§ 211, 667.5, subd. (c)(8), (9), 12022.5, subd. (a).) Also, the father was convicted of aggravated assault where he was found to have inflicted great bodily injury which is also a violent felony. (Pen. Code, §§ 245, subd. (a), 667, subd. (c)(8), 12022.7, subd. (a).) Therefore, substantial evidence supports the section 361.5, subdivision (b)(12) finding.

Second, the evidence supports the denial of reunification services based on application of the factors for determining detriment to a child pursuant to section 361.5, subdivision (e)(1). Here, at the time of the adjudication, James and S.D. were six years old and four years old respectively. When the children were detained, James was five and S.D. was three. The maximum amount of time for reunification services was 12 months. There is no evidence that either child knew the father or had any kind of relationship with him. James, who was born in July 1995, stated that he had never seen his father. James believed that S.D., who was born in 1997, had seen the father once. The father was incarcerated for an offense committed in 1995 for which he had been convicted in 1996. The father was convicted of a violent felony directed at a former girlfriend—an act of domestic violence. The girlfriend was violently assaulted and the father inflicted great bodily

injury upon her. (Pen. Code, §§ 245, subd. (a), 12022.7, subd. (a).) Two 1-year enhancements were imposed pursuant to Penal Code section 667.5. The father was sentenced to prison for nine years. The father has now been convicted of seven felonies. The father was expected to be released from prison in June 2003. The children were detained on June 15, 2001. The father's June 2003 release date exceeded the 12-month maximum period of reunification services which could be provided. (§ 361.5, subds. (a) & (e)(1).) Furthermore, there is no indication that the children would suffer any detriment from not receiving reunification services. The juvenile court order denying reunification services is supported by substantial evidence.

## IV. DISPOSITION

The jurisdictional and dispositional orders are affirmed.

Armstrong, J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 19, 2003.