Filed 5/20/13  In re Anthony G. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ANTHONY G. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VERONICA R.,<br><br>Defendant and Appellant. | B244687<br>(Los Angeles County<br>Super. Ct. No. CK62695) |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, Office of the County Counsel, James M. Owens, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

Veronica R. (Mother) appeals the juvenile court's jurisdictional order finding her 17-year old son Anthony, 12-year old daughter Janessa and two-year old daughter C. dependents under Welfare and Institutions Code section 300, subdivision (b).[1] Mother contends substantial evidence does not support that the children were at current risk of substantial harm. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The family came to the attention of the Department of Children and Family Services (DCFS) on June 5, 2012, when the police, after executing a search warrant at the family home, arrested Mother for being a felon in possession of a weapon and for child endangerment. The weapon in question, a 40-caliber handgun, was found loaded and lying on a bed where any of the children could have reached it. A box of live ammunition was found in a kitchen cabinet.[2] According to Mother, the handgun belonged to her father, who lived in the one-bedroom apartment with Mother, the three minors, and Mother's adult daughter, Jessica G. The caseworker noted the apartment was unkempt and observed live and dead cockroaches on the premises. Police officers reported that Mother was associated with a Lynwood gang and was known as "Mousy." The inside of the garage was covered in gang-related graffiti.

The older children were interviewed. They denied any physical or sexual abuse or observing any domestic conflict or drug use in the home. They were both aware of the gun's presence in their apartment. Mother was aware that her father owned a gun, but claimed not to know how it was stored. Mother denied current involvement with the Lynwood gang and stated she had not used drugs for four or

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    The gun and ammunition were confiscated by the officers.

five years, although she had been arrested for public intoxication a few months earlier. She also denied having had contact with DCFS in the past. However, the caseworker learned that between March 2006 and January 2008, Mother had an open case which began when deputies interrupted Mother and a companion preparing a dose of methamphetamine in Mother's car, while the children played in a nearby park.[3]

On June 8, 2012, DCFS filed a petition under section 300 alleging that Mother "placed the children in an endangering and detrimental home environment in that on 6/4/12 a loaded firearm[] and ammunition were found in the children's home within access of the children."[4] At the June 8, 2012 detention hearing, the court ordered the children detained in foster care.[5]

On June 29, 2012, DCFS filed an amended petition, adding the allegation that Mother "has a criminal history of felony convictions, transportation of [a] controlled substance and possession of [a] controlled substance" and that her "criminal history and conduct endanger[] the children's physical and emotional

---

[3] Records indicated that Mother had been convicted of carrying a concealed weapon in April 2005, transporting a controlled substance in July 2005, and possessing a controlled substance in January 2009. She served 38 days in jail for the first offense, and was placed on probation for three years for the second and third offenses. She was also arrested for possession of a controlled substance in March 2006.

[4] At the time of the detention, the whereabouts of the children's biological fathers, Luis G., Edgar M., and Fabian V., were unknown. DCFS subsequently learned that Anthony's father, Luis G., had been deported after serving a lengthy term of imprisonment. C.'s father, Fabian V., subsequently came forward, attained presumed father status, and participated in the proceedings. None of the fathers is a party to this appeal.

[5] Mother had been released from custody at the time of the detention hearing. There is no indication in the record that charges were filed against her.

health and safety, create[] a detrimental home environment, [and] plac[e] the children at risk of physical and emotional harm and damage."[6]

Interviewed for the jurisdictional/dispositional hearing, Anthony and Janessa stated that the gun had been given to their grandfather for his protection by an uncle and was usually kept under his pillow. Anthony stated that sometimes his grandfather would ask him to get the weapon for him. Janessa stated that she had handled it as well, and that "on . . . occasion" the grandfather left it in the bathroom. Both children were doing poorly in school: Anthony was in eleventh grade but doing ninth grade work, and Janessa, in middle school, was not completing her assignments.

Mother told the caseworker she found nothing inappropriate in having a gun in the home, and said the children had been taught not to touch it, especially the trigger. She claimed her father always kept it on his person, except at night when he put it under his pillow. She acknowledged, however, that when her father left the gun on the bathroom sink, her younger daughter retrieved it. Mother claimed never to carry the gun because she felt that she could be easily provoked to use it.[7] She denied being an active gang member, but acknowledged continuing to associate with members of her former gang and allowing them to eat at her home, hang out, "'smoke out,'" and stay in the apartment's garage.[8]

The grandfather stated the gun had been a gift from his son 10 years ago, and said he either kept it with him or put it under his mattress or pillow. He told

---

[6] The amended petition also added allegations that C.'s father, Fabian V., had a criminal history of felony convictions for violence-related offenses, and that he failed to provide the child with the necessities of life.

[7] Mother had told police officers that a former gang associate was at her house a few weeks earlier and called her older daughter a "'bitch.'" Mother stated that if she had had the gun, she would have shot him.

[8] "'Smoke out'" is slang for smoking marijuana.

police officers that "'everyone'" in the home handled it, and that he generally kept it loaded with seven live rounds. He claimed to have taught the children not to touch the gun, and said he did not keep the gun in a security box because "'it was never a problem. The kids knew not to touch it.'"

At the August 8, 2012, jurisdictional/dispositional hearing, the court received stipulated testimony from a police detective that Mother had been cooperative with police and had been participating in an anti-gang community project. Mother provided a clean drug test and evidence that she had begun participating in a parenting class in June. Mother and the children's attorney urged the court to dismiss the petition, contending that there was no evidence of current risk of harm. Mother's counsel represented that her father had moved to Washington. The attorney for DCFS argued that the allegation that there was a gun in the home, accessible to the children and handled by the children, established that the children were at risk of harm, and that Mother's past illegal activity established a pattern of placing the children at risk.

The court struck the original allegation that the presence of a gun in the home in June 2012 placed the children in an endangering home environment. It found, however, that Mother still associated with gang members, many of whom carried weapons, and that she allowed them to frequent her home. These facts, combined with the evidence that Mother knowingly allowed a gun to be present in the home and handled by the children, supported jurisdiction under section 300, subdivision (b). The court also found that the older children's school problems suggested that Mother was not adequately supervising the children. It therefore found true that Mother's "criminal history and conduct endanger[ed] the children's physical and emotional health and safety, creat[ed] a detrimental home environment, [and] plac[ed] the children at risk of physical and emotional harm and damage." Turning to disposition, the court placed the children in the physical

5

custody of Mother over DCFS's objection and ordered her to participate in family preservation services, parenting classes and individual counseling. This appeal followed.[9]

## DISCUSSION

In order to assert jurisdiction over a minor, the juvenile court must find that he or she falls within one or more of the categories specified in section 300. (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) DCFS bears the burden of proving by a preponderance of the evidence that the minor comes under the juvenile court's jurisdiction. (*Ibid.*; *In re Shelley J.* (1998) 68 Cal.App.4th 322, 329.) "We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citation.]" (*In re David M.* (2005) 134 Cal.App.4th 822, 828.)

Section 300, subdivision (b), the provision under which the court asserted jurisdiction in the present matter, permits the court to adjudge a child a dependent of the juvenile court where "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." A true finding under subdivision (b) requires proof of: "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious

_____

[9]     While the appeal was pending, respondent asked this court to take judicial notice that on December 18, 2012, the juvenile court terminated jurisdiction and released the children to Mother. Based on that order, respondent moved to dismiss the appeal on the ground of mootness. We granted the request for judicial notice, but denied the motion to dismiss. (See *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716; *In re Joshua C.* (1994) 24 Cal.App.4th 1544, 1548.)

6

physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) DCFS must show that at the time of the jurisdictional hearing there was a current risk of substantial harm, or that the child would be at substantial risk of serious physical harm in the future. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1023; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396.)

Mother contends that neither the earlier presence of her father's handgun in the family home nor her criminal history and past and current gang association placed the children at risk of physical harm. We disagree. The dangers to children of all ages from access to handguns is well known. Reports of accidental shootings by children who happen upon unsecured loaded guns appear in the media with regrettable frequency. Nevertheless, Mother knowingly permitted the children to live in close quarters with a constantly loaded and unsecured handgun. Not only were the children aware of the gun's presence and location, but they had all been allowed to handle it. Although Mother and her father claimed that he kept it on his person during the day and under his pillow when he slept, the officers found it lying on the bed when they searched the apartment. The evidence indicated that the grandfather had left it in the bathroom and under his mattress on separate occasions, and Janessa reported it was usually kept under his pillow, a place where any one of the children could have picked it up and accidently discharged it.

Mother claims that the removal of the handgun from the family home and her father's post-detention departure were proof that the family was safe at the time of the jurisdictional hearing. Again, we disagree. The evidence indicated that Mother never appreciated the danger to the children of the handgun and never attempted to secure it, although her father had owned it for a decade. That particular gun was no longer in the picture, but Mother continued to associate with -- and to allow into her home -- gang members likely to have weapons in their

7

possession and to be no more responsible than her father about securing them. Mother's seeming obliviousness to the danger of placing a loaded weapon in the vicinity of young children would have continued to place them at risk of physical harm. The court's decision to assert jurisdiction in order to protect the children and ensure that Mother acquired basic parenting skills was a reasonable one.[10]

---

[10] Mother points out that the court found that her history and conduct subjected the children to a risk of physical "and emotional harm," and rightly contends that jurisdiction under section 300, subdivision (b) may not be based on emotional harm. (See *In re Daisy H.*, *supra*, 192 Cal.App.4th at pp. 717-718 [noting that section 300, subdivision (c) permits a jurisdictional finding if the child is suffering or at risk of suffering "'serious emotional damage, evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior toward self or others . . . ,'" but that subdivision (b) requires proof of substantial risk of serious physical harm, and no provision of dependency law supports jurisdiction on the ground of "'emotional harm'"].) However, erroneous or inadequate allegations in a petition must be brought to the attention of the juvenile court prior to the adjudication, and failure to object or demur in a timely manner causes the issue to be forfeited on appeal. (*In re Christopher C.* (2010) 182 Cal.App.4th 73, 82.) There is no indication that Mother brought the surplus language of the allegation to the attention of the juvenile court or objected to the court's specific finding.

8

## DISPOSITION

The jurisdictional order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


SUZUKAWA, J.