56 Cal.Rptr.3d 697 (2007)
149 Cal.App.4th 61
In re MARK B. et al., Persons Coming Under the Juvenile Court Law.
Sacramento County Department of Health and Human Services, Plaintiff,
v.
Leslie B., Defendant; Dale S. Wilson, Real Party in Interest and Respondent;
Julie Lynn Wolff, Real Party in Interest and Appellant.
Nos. C049885, C050371.
Court of Appeal of California, Third District.
March 29, 2007.
As Modified on Denial of Rehearing April 13, 2007.
*698 Law Office of Julie Lynn Wolff and Julie Lynn Wolff, Sacramento, for Real Party in Interest and Appellant.
Weintraub Genshlea Chediak, Thadd A. Blizzard and Charles L. Post, Sacramento, for Real Party in Interest and Respondent.
Robert A. Ryan, Jr., County Counsel and Lilly C. Frawley, Deputy County Counsel as Amicus Curiae for Real Party in Interest and Respondent.
CERTIFIED FOR PARTIAL PUBLICATION.[*]
SIMS, Acting P.J.
"Code of Civil Procedure section 128.7 provides that the riling of a pleading certifies that, to the attorney or unrepresented party's `knowledge, information, and belief, *699 formed after an inquiry reasonable under the circumstances,' the pleading is not being presented `primarily for an improper purpose,' the claims, defenses and other legal contentions therein are warranted,' and the allegations and other factual contentions `have evidentiary support.' (Id., subd.'(b).) If these standards are violated, the court can impose an appropriate sanction sufficient to deter future misconduct, including a monetary sanction. (Id., subds. (c), (d).)" (Stop Youth Addiction, Inc. v. Lucky Stores, Inc. (1998) 17 Cal.4th 553, 575, 71 Cal.Rptr.2d 731, 950 P.2d 1086.)[1]
*700 This appeal raises three questions under Code of Civil Procedure section 128.7 (section 128.7):(1) May a juvenile court hearing a dependency case (Welf. & Inst.Code, § 300) lawfully impose sanctions under section 128.7? (2) May a juvenile court referee lawfully do so? (3) If lawfully made, was the sanctions order justified on the record in this case?
For reasons that follow, in the published portion of the opinion, we answer the first two questions, "Yes." In the unpublished portion of the opinion, we conclude the sanctions imposed in this case were justified.
In appeal No. C049885, Leslie B., the mother of minors Mark B., Jr., Etijah G., Angelique G., and Caryssa C, sought review of the juvenile court's findings and orders as to the minors; in addition, Leslie B.'s attorney, Julie Lynn Wolff, sought review of the court's order sanctioning Wolff pursuant to section 128.7. In appeal No. C050371, Wolff additionally sought review of the court's further order awarding attorney's fees to opposing counsel on the sanctions motion. We consolidated the appeals on our own motion. Thereafter, we dismissed the appeal in case No. C049885 for mootness as to the minors but not as to Wolff. This leaves attorney Wolff's appeals from the sanctions orders.
We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
The motion for which attorney Wolff was sanctioned attacked the Sacramento County juvenile court's contract system for appointing dependency conflict counsel. Under that system, established in 1999 and subsequently amended, attorney Dale S. Wilson (real party in interest and respondent on appeal) undertook to create entities to represent indigent adults, then to supervise the entities administratively while maintaining a "glass wall" between them and his own practice, as well as between the entities themselves. Wolff's motion asserted the entities were Wilson's alter egos and all counsel appointed in the case had conflicts of interest. Wilson, not an attorney of record in these proceedings, sought and obtained leave from the juvenile court to oppose the motion, *701 then additionally moved for sanctions under section 128.7.[2] After denying Wolff's motion, the juvenile court referee granted the sanctions motion.

The juvenile court's appointment system
The Sacramento County juvenile court appoints counsel for indigent adults in dependency proceedings under a standing order. The order in effect at the time of these proceedings provides in part:
"Appointment of Counsel for Mothers and Presumed Fathers
"Pursuant to [Welf. & Inst.Code] section 317[, subdivision] (c)[3] and [Cal. Rules of Court] rule 1438(a)(2)(B), [now rule 5.660] the Court has entered into a contract with the Law Office of Dale Wilson, a qualified provider, for the representation of parents in dependency matters, to be compensated on an annual basis for all appearances by that party during the fiscal year. That office is automatically appointed to represent each mother and presumed father of a child who is the subject of a section 300 or 342 dependency petition....
"[¶] ... [¶]
"The Law Office of Dale Wilson shall organize itself into separate divisions under its administrative supervision and/or contract with other conflict-counsel as are necessary to accept the automatic appointments to represent parents in dependency proceedings. A `glass wall' protocol, consistent with the requirements of People v. Christian (1996) 41 Cal.App.4th 986[, 48 Cal.Rptr.2d 867], shall be maintained to prevent the sharing of any confidential or privileged information by members of any division of the Law Office of Dale Wilson with members of the other divisions or with other conflict-counsel. Such divisions shall include, but are not limited to, the Parent Advocates of Sacramento (PAS), Dependency Associates of Sacramento (DAS) and Sacramento County Juvenile Defenders (SCJD).
"Upon such automatic appointment of the Law Office of Dale Wilson to represent parents in a dependency case, it shall examine the circumstances of the case and determine whether a legal conflict of interest exists that would prevent a single lawyer from that office from representing all of the parents named in the petition. Upon the determination of such a conflict, the Law Office of Dale Wilson shall assign the representation of the parents for whom a conflict of interest would exist to separate divisions of its office or other conflict-counsel under its administrative supervision, to the extent required by the contract with the Court."
The amended contract operative at the time of these proceedings provides that the Law Offices of Dale S. Wilson, a firm which represents indigent parties in dependency proceedings, is authorized to provide legal representation for up to four indigent parents, subcontracting as necessary, *702 so long as no conflict of interest arises for Wilson. The contract requires Wilson to meet performance standards for provision of these services and to report periodically to the court on the matters covered by the contract.
To implement the original contract, which provided for two levels of conflict representation, Wilson created PAS and DAS. When the contract was amended to add two more levels of representation, Wilson began to use independent contract attorneys for the third and fourth adults rather than create additional entities.[4]

Appointment of counsel in these proceedings
DAS was appointed to represent the father of minor Mark B., Jr. An attorney from SCJD was appointed to represent the father of minor Caryssa C. A different attorney from SCJD was appointed to represent another biological father in the case, after the Law Office of Dale S. Wilson received the original appointment. Leslie B., the mother, was initially represented by PAS.

Wolff's appearance and filings
After the initial jurisdictional and dispositional hearing, appellant Julie Lynn Wolff substituted in as. Leslie B.'s retained counsel on July 20, 2004. Almost immediately thereafter, Wolff filed a "Motion to Dismiss Attorneys for Actual, or Apparent, Undisclosed Conflict of Interest" (the conflict motion). She filed a "Supplement" to the motion on September 1, 2004, shortly before it was scheduled to be heard.

The conflict motion
The conflict motion, which does not attach any supporting evidence, asserts: "The Law Offices of Dale Wilson are appointed to represent the adults in a dependency case. Despite any claim of PAS/ DAS, or other appointments, all appointments are through the Law Offices of Dale Wilson, with attorneys sometimes identifying themselves as PAS or DAS (not legally recognized entities in California according to the undersigned's research into the matter), and other times as `The Law Offices of Dale Wilson.' It is Dale Wilson who is expected to pay for transcripts for either PAS or DAS, ... on whose behalf objections are made, and who, per the Court's statements, is required by the Presiding Judge to make all appointments for court ordered attorneys for adults in Sacramento County juvenile dependency cases.... Mr. Wilson, one way or the other, is in charge of all the appointments of attorneys in dependency cases. This was never disclosed to mother. No waiver was ever requested, no oral or written disclosures made by counsel, no waiver ever given." This arrangement violates rule 3-310 of the Rules of Professional Conduct (avoiding the representation of adverse interests), mandating the dismissal of the attorneys "appointed by/employed by" Wilson.

The "supplement"
Wolffs hundred-page "supplement" purports to provide evidence and argument to support the motion's allegations.

Evidence
The supplement sets out the court's standing order as part of Wolffs supporting declaration. As exhibits, it attaches: *703 (1) the court's contract with Wilson (in several versions); (2) photocopied Yellow Pages advertisements and listings for Wilson's law firm (showing its address as 2001 21st Street, Sacramento, and its telephone number as 454-2889); (3) a State Bar online entry for attorney Scott M. Fera dated August 22, 2004, showing the Sacramento County Counsel's Office as his employer; (4) a letter on PAS letterhead dated April 1, 2004, showing the address 2001 21st Street, Suite 100, Sacramento, California 95818, the telephone number (916) 731-4981, and a masthead which includes Fera as well as "Managing Attorney" John P. Passalacqua; (5) a State Bar online entry for Passalacqua dated August 21, 2004, apparently showing the Law Offices of Dale S. Wilson as his employer but giving the address and telephone number shown on the letter from PAS; (6) a State Bar online entry for Dale S. Wilson dated August 21, 2004, showing the address 2001 21st Street #200, Sacramento, California 95818, and the telephone number (916) 454-2889; and (7) an undated Website entry for the Law Offices of Dale S. Wilson, showing Passalacqua as an attorney with that office.

Argument
The "Supplement" asserts among other things:
Wilson is compensated for all appointed attorneys, regardless of their labels. They are under his supervision and control and he is expressly responsible for their performance.
An "amendment" to Wilson's contract dated July 1, 2001, which states that it supersedes prior agreements and newly authorizes Wilson to represent the third and fourth parents in juvenile proceedings, gives Wilson until August 25, 2001, "to comply with ethical standards by instituting a `glass wall.'" This language shows that Wilson had not yet done so.[5]
Attorneys working for Wilson are required to violate their clients' confidences insofar as they also represent the clients in drug court under the contract.
The contract does not require Wilson to disclose his representation of multiple parties, to reveal conflicts to clients, or to obtain waivers from them.
The Law Office of Dale Wilson is not a California corporation and the entities PAS, DAS, and SCJD have no fictitious business names on file. These entities are really one, and Wilson is "the sole legal entity behind all those labels[.]"
Wilson has one office at 2100 21st Street, Sacramento, where all attorneys for PAS and DAS work. There is only one entrance to Wilson's office for all his clients, whether private or court-appointed.
Wilson's Yellow Pages advertisements claim his office has handled over 25,000 cases. A number so great must include the cases nominally handled by the entities.
In the present case, the appointed attorneys, including Leslie B.'s original counsel, have provided ineffective assistance and revealed actual conflicts of interest in numerous ways. In one instance, DAS attorney Jessica Taphorn had possession of Leslie B.'s drug court file, tried to interview her, and was scheduled to represent her in drug court before Wolff, who had *704 already substituted in as Leslie B.'s counsel, intervened.[6]

Witness list
Leslie B. "anticipates" calling among others: Wilson; all attorneys appointed in Sacramento County juvenile dependency proceedings since the inception of Wilson's contract, including six named attorneys with PAS, five with DAS, and five with SCJD; the juvenile court's presiding judge; all juvenile court referees; all juvenile dependency court reporters; and all other adult parties in this case.[7]

Wilson's opposition and notice of intent to seek sanctions
After obtaining the court's permission to oppose the motion, Wilson retained counsel and filed opposition. He also gave notice of intent to seek sanctions against Wolff.

The opposition
The opposition, supported by declarations from Wilson, P.&S managing attorney John Passalacqua, DAS managing attorney Stephen Nelson, and DAS attorney Jessica Taphorn, asserts:
Wilson has created the "glass wall" required by People v. Christian (1996) 41 Cal.App.4th 986, 48 Cal.Rptr.2d 867 (Christian).[8] Each entity has a separate office, telephone number, letterhead, pleading paper, business cards, confidential files, support staff, computers, and printers. The managers of Wilson's office and the entities supervise only their own staffs. All staff are trained to recognize the entities' separateness and to treat other entities as opposing counsel with respect to client confidentiality.
All files for clients assigned to independent contract attorneys are maintained by those attorneys, not by Wilson's office, PAS, or DAS. No one from Wilson's office has access to such files or knows any confidential information about those clients. Wilson does not supervise, hire, or fire such attorneys or their staff. PAS and DAS treat those attorneys as opposing counsel.
Wilson is the administrative director of PAS and DAS and the managing attorney of his own firm. His contract requires him to report to the juvenile court on the case-load of PAS, DAS, and independent contract *705 attorneys, to assign cases, and to ensure that conflicts of interest do not arise. However, PAS and DAS are separate from Wilson's office. Each has its own managing attorney. Wilson has no hiring, firing, or disciplinary authority over PAS and DAS employees. Although PAS, DAS, and Wilson's office are in the same building, each has its own separate locked office, telephone number, equipment, supplies, and support staff. All PAS files are kept in white file folders, all DAS files in red file folders, and all files of Wilson's clients in blue folders. All staff are trained in the "glass wall" principle, and any infraction is grounds for discipline by that staff person's managing attorney.
Leslie B. had argued that Christian, supra, 41 Cal.App.4th 986, 48 Cal.Rptr.2d 867, was inapposite because a public agency, not a private attorney, created the separate units and firms described there. However, the decision does not make that distinction. Moreover, as in Christian, a public agency (the county) funds all attorneys appointed under Wilson's contract. Wilson may not represent any party in a case in which he has referred another party to PAS, DAS, or an independent contractor, regardless of how he would be paid.
Wilson's contract also requires him to provide an attorney to attend dependency drug court, which operates a treatment and recovery program known as STARS. Non-confidential STARS reports are sent to PAS or DAS; all such reports for non-PAS and non-DAS clients are placed in a file folder and taken to drug court for the attorney representing the STARS client. DAS attorney Jessica Taphorn was assigned to drug court on August 4, 2004. DAS managing attorney Stephen Nelson instructed her to give Leslie B.'s STARS reports to her attorney, Wolff. Taphorn did so. At no time did Taphorn or other
DAS attorneys have Leslie B.'s PAS dependency file.

Notice of intent to seek sanctions
Along with Wilson's opposition, he requested a continuance of the hearing on the motion to "allow [the] Court to consider sanctions against Julie Lynn Wolff under [ ] section 128.7." Wilson's retained counsel, Charles Post, declared as relevant that he had written to Wolff on December 24, 2004, advising her he would seek sanctions if she did not withdraw the motion, and Wolff had refused to do so.

The sanctions motion
On January 11, 2005, Wilson served a motion for sanctions against Wolff under section 128.7, citing all grounds specified in the statute. The motion was filed on February 2, 2005. Wilson asserted that juvenile courts can order section 128.7 sanctions, but did not cite any authority on point.

The court's ruling on the conflict motion
On March 29, 2005, juvenile court referee Carol Chrisman issued a written order denying the conflict motion.
On the merits, Referee Chrisman found: (1) It did not per se violate the "glass wall" principle for a private law office, rather than a government agency or a nonprofit entity, to be the contractor in a conflict counsel arrangement. (2) The Wilson Law Offices had set up the required "glass wall." (3) Leslie B. had failed to show any breach of the "glass wall" or any actual conflict of interest as to any appointed counsel in this case.
Referee Chrisman also found: Although Wolff had indicated "there were a plethora of witnesses with relevant testimony, should the matter advance to trial," she *706 declined to make offers of proof and submitted on the pleadings. Juvenile courts may decide disputed matters without trial if the party raising the issue refuses to make an offer of proof. Here, the pleadings did not set forth sufficient evidence to warrant a trial. In any event, there was no showing that any possible transgression had had or could have any continuing effect on the proceedings; Leslie B. had already used the State Bar's administrative remedy; and PAS and DAS no longer represented any parties in the case.

The court's orders on the sanctions motion
On March 9, 2005, after argument on the sanctions motion, Referee Chrisman requested supplemental briefing on the juvenile court's authority to order section 128.7 sanctions. Only Wilson responded.
On April 20, 2005, Referee Chrisman granted the motion and ordered sanctions in the amount of $1,000 payable to the court, plus reasonable attorney's fees and expenses to Wilson as per proof. We set out her key findings in part III of the Discussion, post.
On June 3, 2005, after reviewing Wilson's documentation of his fees and expenses, Referee Chrisman ordered Wolff to pay the sum of $5,989.50 as attorney's fees to the Law Offices of Dale Wilson.[9] The order notes that Wolff did not file an objection or any other response to Wilson's claimed fees and expenses.

DISCUSSION

I
The first issue is whether the juvenile court in dependency proceedings may impose sanctions under section 128.7. We conclude it may.
Section 128.7 provides in part (italics added):
"(b) By presenting to the court ... a pleading, petition, written notice of motion, or other similar paper, an attorney ... is certifying that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:
"(1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
"(2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
"(3) The allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
"[¶] ... [¶]
"(c) If ... the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys ... that have violated subdivision (b)....
"(1).... Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the *707 court may prescribe, the challenged paper ... is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion....
"(2) On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b)....
"[¶] ... [¶]
"(e) When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.
"(f) In addition to any award pursuant to this section for conduct described in subdivision (b), the court may impose punitive damages against the plaintiff....
"[¶] ... [¶]
"(h) A motion for sanctions brought ... primarily for an improper purpose ... shall itself be subject to a motion for sanctions. It is the intent of the Legislature that courts shall vigorously use its [sic ] sanctions authority to deter that improper conduct or comparable conduct by others similarly situated.
"(i) This section shall apply to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in that matter." (See fn. 1, ante.)
In construing statutes, we look first to their plain language. (People v. Statum (2002) 28 Cal.4th 682, 689, 122 Cal.Rptr.2d 572, 50 P.3d 355.) Section 128.7 repeatedly speaks of "the court" or "courts" without restriction. It cites the full range of pleadings that may be filed in civil court, whether in an action or a special proceeding. (Cf. Code Civ. Proa, §§ 21-23.) Juvenile dependency proceedings are special proceedings. (In re Chantal S. (1996) 13 Cal.4th 196, 200, 51 Cal.Rptr.2d 866, 913 P.2d 1075; In re Shelley J. (1998) 68 Cal. App.4th 322, 328, 79 Cal.Rptr.2d 922.) Section 128.7 expressly covers both "complaint[s]," which commence civil actions (Code Civ. Proc, § 350), and "petition[s]," which commence special proceedings (see, e.g., Code Civ. Proc, §§ 1069, 1086, 1103, 1281.2, 1354-1355). Thus, section 128.7 on its face applies to all civil courts and civil proceedings.
Furthermore, the internal organization of a code may aid in understanding a statute's purpose (Medical Board v. Superior Court. (2003) 111 Cal.App.4th 163, 175, 4 Cal.Rptr.3d 403), and chapter and section headings in the codes may be considered in determining legislative intent. (People v. Superior Court (Laff) (2001) 25 Cal.4th 703, 727, 107 Cal.Rptr.2d 323, 23 P.3d 563; People v. Hull (1991) 1 Cal.4th 266, 272, 2 Cal.Rptr.2d 526, 820 P.2d 1036.) Following its introductory provisions, the Code of Civil Procedure has four parts: Part 1, "Of Courts of Justice" (§§ 33-286); Part 2, "Of Civil Actions" (§§ 307-1062.20); Part 3, "Of Special Proceedings of a Civil Nature" (§§ 1063-1822.60); and Part 4, "Miscellaneous Provisions" (§§ 1855-2107). Section 128.7 is located within Part 1, which applies generally to all civil proceedings, not within Parts 2 or 3, which apply only to specified proceedings. This location suggests the Legislature meant section 128.7 to apply across the board in every civil court and proceeding.
In addition, because section 128.7 is modeled on Rule 11 of the Federal Rules of Civil Procedure, we may look to the federal courts' interpretation of that rule. (Eichenbaum v. Alon (2003) 106 Cal. App.4th 967, 975, fn. 6, 131 Cal.Rptr.2d 296.) They have held that Rule 11 applies to all types of civil courts and proceedings, *708 unless some more specific sanctioning rule or statute controls. (See, e.g., Cooter & Gell v. Hartmarx Corp. (1990) 496 U.S. 384, 391-393, 110 S.Ct. 2447, 2453-54, 110 L.Ed.2d 359, 372-374; Tri-State Steel Const. Co., Inc. v. Herman (6th Cir.1999) 164 F.3d 973, 980; Child v. Beame (S.D.N.Y.1976) 412 F.Supp. 593, 599-601 [Rule 11 applicable to complaint brought by children placed with foster care agencies, alleging malfeasance and violations of state law].) The statutory scheme defining our juvenile dependency system does not include any such specific statute or rule. (§§ 300-395; Cal. Rules of Court, rules 5.660-5.740.)
Finally, the policy underlying section 128.7 favors its use in dependency proceedings. The statute enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources. Such evils are especially pernicious in dependency proceedings, which should be conducted as informally and nonadversarially as possible to protect the minors' interests. (§ 350, subd. (a)(1).)[10] This case makes the point starkly: according to the sanctions order, Wolff's conflict motion derailed the pending proceedings and "set into action a series of hearings that delayed the proceedings for [eight] months." If anything, juvenile courts hearing dependency cases need section 128.7 even more than do civil courts in general.
The contrary arguments of Wolff and amicus County Counsel are unpersuasive.
Wolff and County Counsel note that "[a] superior court convened as and exercising the special powers of a juvenile court is vested with jurisdiction to make only those limited determinations authorized by the legislative grant of those special powers. [Citations.]" (In re Lisa R. (1975) 13 Cal.3d 636, 643, 119 Cal.Rptr. 475, 532 P.2d 123; accord, People v. Nguyen (1990) 222 Cal.App.3d 1612, 1619, 272 Cal.Rptr. 523; In re Jody R. (1990) 218 Cal.App.3d 1615, 1622-1623, 267 Cal.Rptr. 746.) They then assert that the "determination" to impose sanctions is not within this legislative grant of power because sections 300 through 395, the enabling legislation for dependency proceedings, do not expressly incorporate section 128.7 or any other sanctions provision.[11] Even if a sanctions order is a "determination" as the cited cases use that term, the conclusion drawn by Wolff and County Counsel does not follow.
"Notwithstanding the absence of specific authorization to make particular determinations, a juvenile court is nevertheless vested with the authority to make such determinations which [sic] are incidentally necessary to the performance of *709 those functions demanded of it by the Legislature pursuant to the Juvenile Court Law." (In re Lisa R., supra, 13 Cal.3d at p. 643, 119 Cal.Rptr. 475, 532 P.2d 123 [power to determine parentage]; accord, In re Ashley M. (2003) 114 Cal.App.4th 1, 6, 7 Cal.Rptr.3d 237; In re Jody R, supra, 218 Cal.App.3d at p. 1623, 267 Cal.Rptr. 746.) Within Part 1 of the Code of Civil Procedure, section 128.7 appears in article 2 ("Powers and Duties of Courts") of chapter 6 ("General Provisions Respecting Courts of Justice"), immediately following section 128, which authorizes "every court" to control its proceedings by means other than sanctions. Read together, these sections constitute an express legislative grant to all courts of the incidental power to take all steps, including sanctions, necessary to perform their designated functions efficiently.
In a related argument, Wolff and County Counsel contend that section 128.7 sanctions are outside the juvenile court's power because that court is governed by its own rules and statutes, to which the "requirements" of the Civil Code and the Code of Civil Procedure do not apply unless otherwise specified. (Cf. In re Chantal S., supra, 13 Cal.4th at p. 200, 51 Cal.Rptr.2d 866, 913 P.2d 1075; In re Shelley J., supra, 68 Cal.App.4th at p. 328, 79 Cal. Rptr.2d 922; In re Jennifer R. (1993) 14 Cal.App.4th 704, 711, 17 Cal.Rptr.2d 759; Jones T. v. Superior Court (1989) 215 Cal. App.3d 240, 245, fn. 3, 264 Cal.Rptr. 4; In re Angela R. (1989) 212 Cal.App.3d 257, 273, 260 Cal.Rptr. 612.) We disagree.
In In re Chantal S., supra, our Supreme Court merely stated: "Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code." (In re Chantal S., supra, 13 Cal.4th at p. 200, 51 Cal.Rptr.2d 866, 913 P.2d 1075; italics added.) The court did not hold that provisions of other codes are inapplicable unless otherwise specified.
Our review of the cases cited by the parties on this question reveals that none involved application of a statute found in Part 1 ["Of courts of Justice;" §§ 33-286] of the Code of Civil Procedure.
Thus, In re Chantal S., supra, 13 Cal.4th 196, 51 Cal.Rptr.2d 866, 913 P.2d 1075, held Family Code section 3190, applicable to custody or visitation disputes, did not apply in a dependency case because "the Legislature knows how to make the Family Code applicable to the juvenile court when it intends to do so...." (Id. at p. 206, 51 Cal.Rptr.2d 866, 913 P.2d 1075.)
In re Jennifer R., supra, 14 Cal.App.4th at 708, 17 Cal.Rptr.2d 759 and Jones T. v. Superior Court, supra, 215 Cal.App.3d 240, 264 Cal.Rptr. 4, both held former Civil Code section 4600 (related to family law custody and visitation orders) inapplicable in dependency cases.
In re Angela R., supra, 212 Cal.App.3d 257, 260 Cal.Rptr. 612, held Code of Civil Procedure section 585, applicable to defaults in civil "actions," was inapplicable in a "special proceeding" brought under former Civil Code section 232. (Id at p. 273, 260 Cal.Rptr. 612.)
The provisions of Part 1 of the Code of Civil Procedure ("Of Courts of Justice") are of a different nature from any of the foregoing statutes. The statutes in Part 1 provide for the fundamental empowerment of the courts, including the juvenile court.
Thus, to pick but a few examples, Code of Civil Procedure section 71 provides that, "[t]he process of superior courts shall extend throughout the state." Code of Civil Procedure section 74 provides, "Adjournments from day to day, or from time to time, are to be construed as recesses in the sessions, and shall not prevent the *710 Court from sitting at any time." Code of Civil Procedure section 128 provides in pertinent part: "(a) Every court shall have the power to do all of the following: [¶] (1) To preserve and enforce order in its immediate presence. [¶] (2) To enforce order in the proceedings before it, or before a person or persons empowered to conduct a judicial investigation under its authority. [¶] (3) To provide for the orderly conduct of proceedings before it, or its officers. [¶] (4) To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein. [¶] (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto. [¶] (6) To compel the attendance of persons to testify in an action or proceeding pending therein, in the cases and manner provided in this code. [¶] (7) To administer oaths in an action or proceeding pending therein, and in all other cases where it may be necessary in the exercise of its powers and duties. [¶] (8) To amend and control its process and orders so as to make them conform to law and justice."
Could anyone contend that these provisions of part 1 of the Code of Civil Procedure, providing for the fundamental power and authority of oil courts, do not apply to a juvenile court hearing a dependency case? We think not. Rather, we believe it beyond dispute that many statutes in part 1 of the Code of Civil Procedure must apply to juvenile courts hearing dependency cases without express incorporation in the Welfare and Institutions Code. In our view, section 128.7 is one of these.
Wolff and County Counsel contend juvenile courts lack `inherent power" to impose sanctions and exceed their jurisdiction by doing so. (Cf. Bauguess v. Paine (1978) 22 Cal.3d 626, 635-639, 150 Cal. Rptr. 461, 586 P.2d 942 [superseded by statute, as stated in Olmstead v. Arthur J. Gallagher & Co. (2004) 32 Cal.4th 804, 809, 11 Cal.Rptr.3d 298, 86 P.3d 354].) But section 128.7 authorizes juvenile courts, like other civil courts, to impose sanctions without resort to "inherent power"; therefore the use of that authority does not exceed their jurisdiction.
Finally, County Counsel asserts public policy does not favor sanctions in dependency proceedings. But if sanctions are authorized by statute, contrary "public policy" arguments must fail because statutes codify public policy. County Counsel's speculative "parade of horribles"a "chilling effect on the riling of juvenile dependency petitions" and an "increase [in] the volume of juvenile dependency appeals" is better addressed "on the other side of Tenth Street, in the halls of the Legislature." (Osborn v. Hertz Corp. (1988) 205 Cal.App.3d 703, 711, 252 Cal.Rptr. 613.) In any event, we have already said that the policy underlying section 128.7 favors its use in dependency proceedings. (See Discussion at pp. 22-23, ante.)
For all the above reasons, we conclude that the juvenile courts may order sanctions under section 128.7 in dependency proceedings.

II
The next issue is whether a juvenile court referee is authorized to order sanctions pursuant to section 128.7. We conclude the answer is "yes" because a juvenile court referee in dependency proceedings has essentially the same powers as a judge and any differences are not material to this issue.
Government Code section 71622 authorizes trial courts to appoint subordinate judicial officers, including referees. Sections *711 247.5 through 254 define juvenile court referees' powers and duties.
"A referee shall hear such cases as are assigned to him or her by the presiding judge of the juvenile court, with the same powers as a judge of the juvenile court, except that a referee shall not conduct any hearing to which the state or federal constitutional prohibitions against double jeopardy apply unless all of the parties thereto stipulate in writing that the referee may act in the capacity of a temporary judge." (§ 248.) Except for orders removing minors from their homes, which require the express approval of a juvenile court judge (§ 249), all orders issued by referees become immediately effective and continue in full force and effect until vacated or modified upon rehearing by order of a juvenile court judge. (§ 250.) Although a party may petition for rehearing of any referee's order by a juvenile court judge, the judge may deny rehearing if the proceedings before the referee were officially transcribed. (§ 252.)
Thus, the statutory scheme authorizes a juvenile court referee in dependency proceedings to make almost any order (subject to rehearing by a juvenile court judge) which a judge could make. This authority necessarily includes the authority to order sanctions pursuant to section 128.7.[12]
County Counsel disagrees, citing article VI, section 22 of the California Constitution, which states: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (Italics added.) But the Legislature has provided that the "subordinate judicial duties" juvenile court referees may perform in dependency proceedings include almost all the duties juvenile court judges may perform, subject only to rehearing by such judges. (§§ 248-252.) Unless this statutory scheme is unconstitutional, which County Counsel does not argue, its more specific language controls.
County Counsel also cites In re Edgar M. (1975) 14 Cal.3d 727 at page 732, 122 Cal.Rptr. 574, 537 P.2d 406; In re Damon C. (1976) 16 Cal.3d 493 at page 498, 128 Cal.Rptr. 172, 546 P.2d 676; and In re Darrell P. (1981) 121 Cal.App.3d 916 at page 923, 175 Cal.Rptr. 682. However, it fails to explain how these decisions support its argument. We conclude they do not.
In re Edgar M., supra, and In re Damon C, supra, construe a now-repealed provision (former § 558, repealed by Stats. 1976, ch. 1068, § 17, p. 4781) which governed juvenile criminal proceedings, (In re Damon C., supra, 16 Cal.3d at p. 498, 128 Cal.Rptr. 172, 546 P.2d 676; In re Edgar M., supra, 14 Cal.3d at p. 732. 122 Cal.Rptr. 574, 537 P.2d 406.) In re Darrell P.. supra, holds that a juvenile court in a criminal proceeding can constitutionally order a rehearing under section 252 without first obtaining a transcript of testimony heard by a referee. (In re Dairell P, supra, 121 Cal.App.3d at p. 918, 175 Cal, Rptr. 682.) None of these decisions holds or implies that juvenile court referees may not order sanctions under section 128.7.
Finally, County Counsel asks us to decide whether, if referees have the authority to order sanctions under section 128.7, those orders are subject to rehearing by juvenile court judges under section 252. County Counsel has requested judicial notice of purported Sacramento County juvenile court orders in other cases which hold that referee-made sanctions orders are not subject to rehearing. Although we granted the request for judicial notice, we conclude the question is not properly before *712 us because Wolff did not seek rehearing of the sanctions order against her. We decline to issue an advisory opinion on this point. (Cf. People v. Slayton (2001) 26 Cal.4th 1076, 1084, 112 Cal.Rptr.2d 561, 32 P.3d 1073.)

III-IV[**]

DISPOSITION
The judgment (order of sanctions and attorney's fees) is affirmed. Dale S. Wilson shall receive his costs on appeal. (Cal. Rules of Court, rule 8.276(a)(1).)
BUTZ and CANTIL-SAKAUYE, JJ., concur.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III and IV of the Discussion.
[1] Code of Civil Procedure, section 128.7 (section 128.7) provides: "(a) Every pleading, petition, written notice of motion, or other similar paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise provided by law, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

"(b) By presenting to the court, whether by signing, filing, submitting, or later advocating, a pleading, petition, written notice of motion, or other similar paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, all of the following conditions are met:
"(1) It is not being presented primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
"(2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.
"(3) The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
"(4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
"(c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation. In determining what sanctions, if any, should be ordered, the court shall consider whether a party seeking sanctions has exercised due diligence.
"(1) A motion for sanctions under this section shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). Notice of motion shall be served as provided in Section 1010, but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
"(2) On its own motion, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b), unless, within 21 days of service of the order to show cause, the challenged paper, claim, defense, contention, allegation, or denial is withdrawn or appropriately corrected.
"(d) A sanction imposed for violation of subdivision (b) shall be limited to what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated. Subject to the limitations in paragraphs (1) and (2), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.
"(1) Monetary sanctions may not be awarded against a represented party for a violation of paragraph (2) of subdivision (b).
"(2) Monetary sanctions may not be awarded on the court's motion unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.
"(e) When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this section and explain the basis for the sanction imposed.
"(f) In addition to any award pursuant to this section for conduct described in subdivision (b), the court may assess punitive damages against the plaintiff upon a determination by the court that the plaintiff's action was an action maintained by a person convicted of a felony against the person's victim, or the victim's heirs, relatives, estate, or personal representative, for injuries arising from the acts for which the person was convicted of a felony, and that the plaintiff is guilty of fraud, oppression, or malice in maintaining the action.
"(g) This section shall not apply to disclosures and discovery requests, responses, objections, and motions.
"(h) A motion for sanctions brought by a party or a party's attorney primarily for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, shall itself be subject to a motion for sanctions. It is the intent of the Legislature that courts shall vigorously use its [sic ] sanctions authority to deter that improper conduct or comparable conduct by others similarly situated.
"(i) This section shall apply to a complaint or petition filed on or after January 1, 1995, and any other pleading, written notice of motion, or other similar paper filed in that matter."
[2] Wolff claimed Wilson lacked standing because he was not a party or an attorney for a party. On appeal, she purports to renew this argument, but her opening brief fails to raise it under a proper heading. Accordingly, it is forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(C); Heavenly Valley v. El Dorado County Bd. of Equalization (2000) 84 Cal. App.4th 1323; 1346, 101 Cal.Rptr.2d 591 (Heavenly Valley ); Opdyk v. California Horse Racing Bd. (1995) 34 Cal.App.4th 1826, 1830, fn. 4, 41 Cal.Rptr.2d 263.) In any event, we agree with the juvenile court and amicus curiae Sacramento County Counsel (County Counsel) that Wilson had standing to oppose a motion which called the named defendants his alter egos. (See Ellis v. Roshei Corp. (1983) 143 Cal.App.3d 642, 645, fn. 3, 192 Cal.Rptr. 57.)
[3] All further undesignated section references are to the Welfare and Institutions Code.
[4] Wilson declared this system emulated that of the Santa Clara County juvenile court in San Jose, designated as a model court for such systems. He and the Sacramento County court entered into their contract after multiple meetings, multiple visits by Wilson to the San Jose court, and Wilson's hiring of a consultant to help set up the system.
[5] The cited language (an addendum, not an amendment) actually states: "CONTRACTOR will have thirty (30) days from date of fully executed agreement, to comply with ethical standards by instituting a `glass wall' for representation of third and fourth level parent conflict cases." (Italics added.)
[6] These allegations appear in Wolff's supporting declaration. No other evidence is offered for the specific charges against counsel. We omit the other charges because the juvenile court referee did not discuss them in ruling on the motion.
[7] Before reciting this list, Wolff asserts: "Wilson has the burden of proving he (and his attorney employees, etc.) should not be disqualified]" It is hard to grasp how Wolff could seriously claim both that Wilson himself had this burden and that he could not be heard to oppose her motion.
[8] The official "Summary" of Christian, supra, 41 Cal.App.4th 986, 48 Cal.Rptr.2d 867, a criminal case, provides in part: "The. court held that there was no violation of defendant's constitutional right to conflict-free counsel, even though one of the two defendants was represented by an attorney from the public defender's office, and the other was represented by the alternate defender's office. Although the county public defender was nominally in charge of both offices, he was an overseer only in a strict administrative sense; he was not involved in any way in the day-to-day operations of the alternate defender's office. In addition, attorneys from the two offices remained physically apart, had no access to each other's files, and adhered to a wellknown policy of keeping all legal activities completely separate, such that the offices were separate `firms.' There was no evidence that those `ethical walls' had been ineffective in avoiding conflicts of interest between the two offices; hence, an ethical separation existed in fact between the two." (People v. Christian, supra, 41 Cal.App.4th at p. 986, 48 Cal.Rptr.2d 867.)
[9] Referee Chrisman disallowed a substantial part of the sum Wilson sought: though his claimed hourly rates for counsel were reasonable, some expenses were not reasonably expended in pursuing the sanctions motion, and the descriptions of others had been redacted so that Referee Chrisman could not determine whether they were incurred on the sanctions motion.
[10] Ironically, amicus County Counsel cites this provision to show why sanctions should not be allowed in dependency proceedings. County Counsel overlooks the fact that a frivolous filing in a dependency proceeding will normally kill any chances to keep matters informal and nonadversarial, as Wolff's motion did here.
[11] County Counsel notes that section 247.5 expressly incorporates Code of Civil Procedure sections 170 and 170.6 (which, like section 128.7, belong to Part 1 of that code) into juvenile proceedings, and asks why legislation was needed to do so if Part 1 provisions apply to all civil courts. The answer is twofold. First, as we discuss below,' section 247.5 belongs to the statutory scheme defining the powers and duties of juvenile court referees, and its main point is to spell out what happens if a referee is disqualified, which the Code of Civil Procedure provisions do not address. Second, the fact that the Legislature sometimes expressly incorporates Code of Civil Procedure provisions into the Welfare and Institutions Code does not prove that this is the only way such provisions can apply to juvenile court proceedings.
[12] We have no occasion to discuss other possible sanctions.
[**] See footnote *, ante.