Filed 11/6/20  Bonner v. U.S. National Bank Assn. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ERNEST L. BONNER,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>        Defendants and Respondents. | A158040<br><br>(Alameda County<br>Super. Ct. No. RG18896276) |

The residence of plaintiff and appellant Ernest L. Bonner (Bonner) was sold in a nonjudicial foreclosure sale in April 2018.  He appeals from dismissal of his wrongful foreclosure action.  He contends the trial court erred in granting summary judgment in favor of defendants U.S. Bank National Association as Legal Title Trustee for Truman 2016 SC6 Title Trust (U.S. Bank) and Fay Servicing, LLC (Fay) (collectively Defendants) because the foreclosure was based on a false chain of title that began with a purported void assignment in 2007.  We affirm.

BACKGROUND

Original Loan and Deed of Trust

In July 2006, Bonner purchased real property located at 2014 Santa Clara Avenue in Alameda, California (the Property).  He financed the

purchase by obtaining a $880,000 loan from New Century Mortgage Corporation (NCMC). Bonner signed a promissory note (Note) and deed of trust (Deed of Trust) securing the Note (collectively the Loan). The Deed of Trust designated Bonner as "Borrower," NCMC as "Lender" and "beneficiary," and Alliance Title as "Trustee."

Paragraph 20 of the Deed of Trust advised Bonner that "the Note or partial interest in the Note (together with this Security Interest) c[ould] be sold one or more times without prior notice to Borrower."

Master Repurchase Agreement

Prior to Bonner's Loan origination, NCMC entered into a Master Repurchase Agreement (MRA) on September 2, 2005, with DB Structured Properties (DBSP)—a subsidiary of Deutsche Bank AG (Deustche Bank). Per the MRA, DBSP was the "Committed Buyer" and NCMC was the "Seller." Under the MRA, DBSP was contractually authorized to repurchase loans from NCMC that DBSP had previously funded if certain default situations arose, including NCMC's insolvency or bankruptcy.

Pursuant to the MRA, DBSP was entitled to "assign to any Person which is a Permitted Assignee" all of or part of its rights thereunder, and could "grant participations to one or more banks or other entities in all or to any part of the Purchased Assets or Transactions [t]hereunder."

The 2007 Assignment and NCMC Bankruptcy

On Friday, March 30, 2007, on the eve of filing for bankruptcy, NCMC sold certain loans, including Bonner's Loan, back to DBSP under the default provisions of the MRA. On Monday, April 2, 2007, NCMC filed for Chapter 11 bankruptcy protection. That same day, NCMC, acting through its attorney-in-fact and loan servicer, Ocwen Loan Servicing, LLC (Ocwen),

assigned its legal interest in the Loan to REO Properties Corporation (REO), a permitted assignee under the MRA (the 2007 Assignment).

Subsequent Assignments and Commencement of Litigation

Bonner defaulted on the Loan in 2008 and initiated numerous lawsuits, including one against defendant Fay, as well as six bankruptcy petitions, to preserve the Property. Following the 2007 Assignment, Bonner's Loan was assigned four more times before it was acquired by defendant U.S. Bank in May 2017. Eventually, U.S. Bank and Fay conducted a foreclosure sale of the Property on April 9, 2018.

Following the April 2018 foreclosure of the Property, Bonner filed the operative complaint raising a single cause of action for wrongful foreclosure. Bonner alleged that Defendants lacked authority to foreclose the Property because their interests were based on a false chain of title that began with the 2007 Assignment.[1] Bonner alleged that because NCMC had transferred its interest in the Loan to DBSP on March 30, 2007, NCMC could not legally convey any interest to REO on April 2, 2007.

Motion for Summary Judgment

Defendants moved for summary judgment, arguing that the 2007 Assignment was not void and, thus, under applicable state law, Bonner had no standing to challenge the foreclosure. (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 923-924 (*Yvanova*). Defendants argued that, although Bonner claimed two transfers occurred (March 30th and April 2nd), there was only one transfer that was implemented on Friday March 30, 2007 and documented the next business day, Monday, April 2, 2007. In support, Defendants submitted the MRA, which defines "Purchase

---

[1] Bonner did not challenge the validity of the assignments after 2007. NCMC, DBSP, and REO were not named defendants in the operative complaint and are not parties to this appeal.

3

Date" as "the date on which . . . Purchased Assets are transferred by a Seller to a Buyer or its designee[.]"  The MRA further specifies that in terms of payment and transfer, the "Purchase Date" is when NCMC "transfers, conveys and assign[s]" to DBSP "or its designee . . . all right, title, and interest" in the purchased loan.

Defendants also submitted evidence that REO, although not a signatory to the MRA, was a Deutsche Bank subsidiary that qualified as an authorized designee of DBSP under the terms of the MRA.

In opposition, Bonner responded to fewer than half of the undisputed facts asserted by Defendants.  In his responses, Bonner either claimed the facts were not material or responded with argument.  Bonner also relied on a declaration submitted in connection with one of Bonner's prior federal lawsuits against defendant Fay.  The declaration was from Helen King, a consultant to NCMC in its bankruptcy proceedings.  She attested that, "Prior to bankruptcy, or about March 30, 2007, NCMC sold the Loan to DBSP under the default provisions of the MRA."  King further averred that as of the April 2, 2007 bankruptcy petition NCMC no longer owned the Loan "as a result of the aforementioned sale," and "the Loan was not (and is not) an asset of the bankruptcy estate of NCMC[.]"  Bonner argued the King declaration established that as of April 2, 2007, NCMC "no longer owned the loan and deed of trust" and thus "could not transfer what it did not have."

In reply, Defendants submitted a declaration from Timothy P. Crowley, a managing director at DBSP, attesting that, "In or around March 2007, due to default by NCMC under the MRA, certain loans reverted to DBSP or certain of its affiliates, including Mr. Bonner's loan . . . . [¶] Pursuant to the exercise by DBSP of its rights under the MRA, Mr. Bonner's loan was

4

assigned from NCMC to REO Properties, Inc. an affiliate of DBSP and permitted assignee under the MRA."

Bonner objected to the late submission of the Crowley declaration and the trial court continued the hearing to allow Bonner an opportunity to respond and submit supplemental opposition papers. In his supplemental papers, Bonner again relied on argument and submitted no new evidence.

In his supplemental opposition, Bonner also raised five new asserted "irregularities" in the 2007 Assignment that were not alleged in the operative complaint. The claimed irregularities were: (1) the failure to include a "legal description" of the Property in the 2007 Assignment; (2) the notary used an incorrect gender pronoun when referring to the signatory of the 2007 Assignment; (3) the recorded version of the 2007 Assignment referenced a power of attorney dated after April 2, 2007; (4) Ocwen did not have authority to transfer the deed; and (5) the Crowley declaration referenced REO Properties, Inc. instead of REO Properties Corporation.

Trial Court's Ruling

After considering the supplemental papers and further argument, the trial court granted summary judgment in Defendants' favor. In its written ruling, the court determined Defendants met their initial burden of introducing evidence showing that Bonner could not establish that the 2007 Assignment was void. Among other things, the court determined that Defendants introduced undisputed evidence that NCMC's " 'sale' of the loan to DBSP (a subsidiary of Deutsche) on March 30, 2007, was part of the same transaction by which NCMC assigned it[s] interest in the Note and D[eed of Trust] to REO Properties Corporation (also a Deutsche subsidiary) on April 2, 2007, as DBSP was authorized under the MRA to have its interests assigned to an 'affiliate' or 'permitted assignee.' " Defendants introduced

5

"uncontroverted evidence that REO is such a 'permitted assignee' because it is an agent, affiliate, and Deutsche subsidiary within the meaning of the MRA."

The trial court determined Bonner had not "met his burden of introducing admissible evidence sufficient to raise a triable issue of fact supporting his theory that the assignment was 'void' . . . because NCMC had no interest to assign on April 2, 2007[.]" The trial court further concluded Bonner's new arguments did not raise a triable issue of fact that could support a finding the 2007 Assignment was "void" as a matter of law.

DISCUSSION

I. *Standard of Review*

We review a grant of summary judgment de novo. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253.) We view the evidence in the light most favorable to Bonner as the party opposing summary judgment and resolve any evidentiary doubts or ambiguities in his favor. (*Dammann v. Golden Gate Bridge, Highway & Transportation Dist.* (2012) 212 Cal.App.4th 335, 340-341.) That said, our review is limited to issues that have been adequately raised and supported in the appellate briefs. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; see also *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

"First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . [¶] Second, . . . the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a

6

burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851 (*Aguilar*); see also Code Civ. Proc., § 437c, subd. (p)(2).)

An issue of contract interpretation that does not turn on the credibility of conflicting extrinsic evidence is a question of law. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 (*Parsons*) ["It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence."]; accord *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 395 (*City of Hope*); *Oh v. Teachers Ins. & Annuity Assn. of America* (2020) 53 Cal.App.5th 71, 84 (*Oh*).)

II.    *Bonner Failed to Raise a Triable Issue of Fact That The 2007 Assignment is Void*

A wrongful foreclosure is a common law tort claim to set aside a foreclosure sale, or an action for damages resulting from the sale, on the basis that the foreclosure was improper. (*Sciarrata v. U.S. National Assn.* (2016) 247 Cal.App.4th 552, 561 (*Sciarrata*). The elements of a wrongful foreclosure cause of action are: " '(1) [T]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.' " (*Miles v. Deutsche Bank National Trust Co.* (2015) 236 Cal.App.4th 394, 408.) With respect to the first element, a "foreclosure initiated by one with no authority to do so is wrongful for purposes of such an

action. [Citations.] [O]nly the original beneficiary, its assignee or an agent of one of these has the authority to instruct the trustee to initiate and complete a nonjudicial foreclosure sale." (*Yvanova, supra,* 62 Cal.4th at p. 929.)

The viability of Bonner's wrongful foreclosure claim hinges on whether he is able to show that the 2007 Assignment was void, as opposed to merely voidable. (*Yvanova, supra,* 62 Cal.4th at pp. 939-940.) In *Yvanova*, the California Supreme Court explained that a plaintiff has standing to proceed with a wrongful foreclosure action if an invalid assignment of a note and deed of trust was void *ab initio* and not merely voidable. (*Id.* at p. 936.) A void transaction is "without legal effect." (*Id.* at p. 929.) "A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.'" (*Id.* at p. 930.) A borrower has standing "to claim a nonjudicial foreclosure was wrongful because an assignment by which the foreclosing party purportedly took a beneficial interest in the deed of trust" was void, "depriving the foreclosing party of any legitimate authority to order a trustee's sale." (*Id.* at pp. 942-943.)

As explained below, Bonner has failed to raise a triable issue of fact that the 2007 assignment is void.

A.    *Break in Chain of Title*

It is undisputed that on March 30, 2007, NCMC sold certain loans, including Bonner's Loan, back to DBSP pursuant to the default provisions of the MRA. It is further undisputed that on April 2, 2007, NCMC assigned its interest in the Loan to REO, a permitted designee of DBSP under the MRA.

Bonner maintains that NCMC could not assign its interest in the Loan to REO because, having sold the Loan to DBSP, it no longer owned the Loan

8

at the time of the 2007 Assignment.  Defendants argue the purchase of Bonner's Loan was a single transaction that began on March 30, 2007 and concluded on April 2, 2007, when NCMC assigned its interest in the Loan to REO.  In the absence of conflicting extrinsic evidence, the determination of the legal significance of this undisputed sequence of events under the MRA is a question of law.  (*Parsons*, *supra*, 62 Cal.2d at p. 865; accord *City of Hope*, *supra*, 43 Cal.4th at p. 395; *Oh*, *supra*, 53 Cal.App.5th at p. 84.)

The MRA specifies that the "Purchase Date" is the date NCMC "transfers, conveys and assign[s]" to DBSP "or its designee . . . all right, title, and interest . . .  in and to [the] Purchased Assets."  "Purchased Assets" are defined as the "Loans sold by [NCMC] to [DBSP] in a Transaction."

The MRA recognizes "it may not be possible to *purchase* or sell *all of the Purchased Assets on a particular Business Day, or in a transaction with the same purchaser, or in the same manner . . . .*"  (Italics added.)  And as such, the MRA provides that "the transactions . . . have been entered into in consideration of and in reliance upon the fact that *all Transactions . . . constitute a single business and contractual relationship* and that each Transaction has been entered into in consideration of the other Transactions . . . ."  (Italics added.)

Read together, the plain import of these provisions is that there was one continuous transaction that began on March 30, 2007 and concluded on April 2, 2007.  Other provisions of the MRA similarly contemplate a single, multi-step transaction.

For example, the MRA provides that DBSP "may, in its sole election . . . *assign, transfer or otherwise convey the Purchased Assets* with a counterparty of [DBSP's] choice . . . . In the event [DBSP] engages in a repurchase transaction with any of the Purchased Assets, [DBSP] shall have the *right to*

9

*assign* to [DBSP's] counterparty any of the applicable representations or warranties herein and the remedies for breach thereof, as they relate to the Purchased Assets . . . ." (Italics added.) The MRA further requires NCMC "to *cooperate* with [DBSP] *in connection with any such assignment* to execute and deliver such replacement notes and to enter into such restatements of, and amendments, supplements and other modifications to, this Agreement and the other Transaction Documents as may be reasonable and necessary *in order to give effect to such assignment*." (Italics added.)

Defendants submitted uncontroverted evidence that DBSP, after acquiring certain loans from NCMC, including Bonner's Loan, exercised its rights under the MRA to transfer Bonner's Loan to its permitted designee REO. Thereafter, NCMC, in compliance with the MRA, assigned the Loan to REO on the next business day.

Bonner's reliance on *Sciarrata, supra,* 247 Cal.App.4th 552, is misplaced. In *Sciarrata,* a lender assigned its interest in a deed of trust to one bank in April 2009 and then purported to effect a second assignment of the same interest to a different bank in November 2009. (*Id.* at pp. 557-558.) The borrower appealed from the judgment of dismissal after the trial court sustained a demurrer to her wrongful foreclosure action. (*Id.* at p. 556.) Assuming the truth of the borrower's allegations, the appellate court determined the assignment to the second bank was void, and not merely voidable. (*Id.* at p. 565.)

Here, by contrast, Bonner was required to come forward with evidence sufficient to raise a triable issue of fact that the 2007 Assignment was void. (See *Aguilar, supra,* 25 Cal.4th at pp. 850-851.) This he has not done. Instead, he argues the King declaration demonstrates that NCMC sold Bonner's Loan to DBSP prior to assignment of the Loan to REO. However, as

explained above, under the plain language of the MRA, the subsequent assignment was part of the same transaction and, thus, valid. The trial court did not err.

B.     *Bonner Has Forfeited His Alternate Theories*

Bonner contends the 2007 Assignment was void for "many reasons," asserting "[t]he list of irregularities are many." However, he makes no reasoned argument on this point under a separate heading with citations to authority. (Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate briefs must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].) Instead, Bonner references these so-called "irregularities" in the concluding paragraph of his opening brief.

"The purpose of requiring headings and coherent arguments in appellate briefs is 'to lighten the labors of the appellate [courts] by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1831, fn. 4.) Bonner has forfeited his other bases for claiming voidness by failing to raise them under proper separate headings. (*In re Mark B.* (2007) 149 Cal.App.4th 61, 67, fn. 2; *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1345, fn. 17 ["Each point in an appellate brief should appear under a separate heading, and we need not address contentions not properly briefed."].) Moreover, his additional contentions that the 2007 Assignment is void are utterly devoid of any legal analysis and authority, which also results in forfeiture. (*Tellez v. Rich Voss Trucking, Inc.* (2015) 240

11

Cal.App.4th 1052, 1066 ["When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."].)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

_____

                                    SIMONS, Acting P.J.

We concur.

_____

BURNS, J.

_____

REARDON, J.*

(A158040)

_____

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13